**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| **LIBERTY COUNSEL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** __4:17cv71_____ |
| | ) | |
| **GUIDESTAR USA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

*"Sometimes the press will describe [SPLC] as monitoring hate groups and so on. I want to say plainly that our aim is to destroy these groups, to completely destroy them."[1]*

**COMPLAINT**

For its COMPLAINT against Defendant GUIDESTAR USA, INC. ("GuideStar"), Plaintiff LIBERTY COUNSEL, INC. ("Liberty Counsel"), by and through the undersigned counsel, hereby alleges and avers as follows:

**INTRODUCTION**

1.      Liberty Counsel brings this action against GuideStar for its tortious and unlawful adoption and republication of the Southern Poverty Law Center's ("SPLC") defamatory, false, and misleading designation of Liberty Counsel as a "hate group," based on nothing more than its Christian viewpoint on matters of religious liberty, the sanctity of life, human sexuality, marriage, and family values.

---

[1] Speech of Mark Potok, Senior Fellow at Southern Poverty Law Center, *Mark Potok Speech 1*, YOUTUBE (Sept. 11, 2007), https://www.youtube.com/watch?v=fnTz2ylJo_8&feature=reImfu (last visited Jun 20, 2017) (discussing SPLC's purpose behind attaching the "hate group" label to certain organizations with which it disagrees).

2.      GuideStar's adoption and republication of the SPLC's defamatory, false, and misleading labeling of Liberty Counsel as a "hate group" is purposefully deceitful and intended to tarnish Liberty Counsel's reputation, disparage Liberty Counsel's good name and work, inflict harm and financial damage, reduce Liberty Counsel's goodwill and standing in the community, expose Liberty Counsel's staff to public scorn, harassment, intimidation, and potential violence, and to denigrate, malign, and ridicule Liberty Counsel to countless individuals, donors, and potential donors around the world.

3.      GuideStar's slanderous, defamatory, false, and misleading statement of fact portraying Liberty Counsel as a "hate group" targets Liberty Counsel for scorn in the community of nonprofit organizations and is purposefully directed at countless numbers of potential donors with the intent to persuade them to sever ties with Liberty Counsel, cease providing donations to Liberty Counsel, to persuade interested donors not to give to Liberty Counsel, to cause companies that provide matching employee contributions to block further contributions to Liberty Counsel, and to assist GuideStar's political partner, the SPLC, in achieving its mission of "completely destroying" Liberty Counsel.

4.      In this action, Liberty Counsel seeks a declaration that GuideStar's designation of Liberty Counsel as a "hate group" is a false and misleading representation of fact that is likely to cause confusion and deceive in such a manner that brings reputational and actual injury to Liberty Counsel in violation of the Lanham Act, 15 U.S.C. § 1125(a). Pursuant to 15 U.S.C. § 1116, Liberty Counsel also seeks permanent injunctive relief enjoining GuideStar and its agents, servants, departments, divisions, employees and those acting in active concert and participation with it from continuing to publish the slanderous, defamatory, false, and misleading designation of Liberty Counsel as a "hate group." Liberty Counsel also seeks an award actual and reputational

damages arising from GuideStar's slanderous, defamatory, false, and misleading description of Liberty Counsel as a "hate group," and an award of attorney's fees and cost pursuant to 15 U.S.C. § 1117(a).

5. An actual controversy exists between Liberty Counsel and GuideStar involving substantial statutory and common law violations under both the Lanham Act and the applicable laws of the Commonwealth of Virginia.

## PARTIES

6. Plaintiff, Liberty Counsel, is and was at all times relevant herein a Florida not-for-profit corporation with its principal place of business in Florida. Liberty Counsel also maintains satellite offices in Virginia and Washington, D.C.

7. Defendant, GuideStar, is and was at all times relevant herein a non-profit corporation incorporated under the laws of Delaware and authorized to do business in the Commonwealth as a Virginia Foreign Corporation under Va. Code §§ 13.1-919, 13.1-923 with its principal place of business in Williamsburg, Virginia.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Liberty Counsel's claims under the Lanham Act, 15 U.S.C. § 1125, pursuant to 28 U.S.C. §§ 1331 and 1338.

9. This Court has pendent jurisdiction over Liberty Counsel's claims brought under the laws of the Commonwealth of Virginia pursuant to 28 U.S.C. § 1367.

10. This Court also has diversity jurisdiction over Liberty Counsel's claims pursuant to 28 U.S.C. § 1332(a)(1), because Liberty Counsel and GuideStar are citizens of different states and the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to Liberty Counsel's claims occurred in this district.

12.     This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Fed. R. Civ. P. 57.

13.     This Court is authorized to grant permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

14.     This Court is authorized to grant Liberty Counsel's relief regarding costs and damages, including a reasonable attorney's fee, pursuant to 15 U.S.C. §1117(a).

## GENERAL FACTUAL ALLEGATIONS

## LIBERTY COUNSEL

15.     Liberty Counsel is a non-profit education, advocacy, and legal defense organization dedicated to advancing religious freedom, the sanctity of human life, and the preservation of family values from a Christian and Biblical perspective.

16.     Liberty Counsel is recognized by the Internal Revenue Service as a non-profit, tax-exempt organization under 26 U.S.C. § 501(c)(3).

17.     Liberty Counsel is known nationally and internationally for its litigation, education, and public policy activities.

18.     Liberty Counsel has represented many national and international clients in courtrooms across the globe, candidates and members of state and federal legislatures, state Supreme Court justices, candidates for judicial office, colleges and universities, local branches of government, public school boards, and countless individuals, business, and churches.

19.      Liberty Counsel attorneys are admitted to the United States Supreme Court, every federal circuit court of appeals, numerous federal district courts across the country, and are licensed to practice law in numerous states. Liberty Counsel and its attorneys have appeared before the United States Supreme Court, many state Supreme Courts, and many federal Circuit Courts of Appeal, District Courts, and lower state courts.

20.      Liberty Counsel attorneys are involved in numerous media interviews each year resulting in thousands of printed articles and media broadcasts, and have appeared on countless radio and television network and cable programs. Liberty Counsel also gained international attention on the award-winning CNN documentary "God's Warriors" with Christiane Amanpour, which was a three-part series about Judaism, Christianity, and Islam. The series on Christianity featured Liberty Counsel's work on religious liberty cases and Liberty Counsel's founder, Mat Staver, as Dean of a law school with a specially-designed judicial bench that is a replica of the United States Supreme Court's 9-member bench.

21.      Liberty Counsel attorneys have testified before United States Congressional committees on public policy issues of national and international significance, including religious expression, religious liberty, speech, immigration, and employment discrimination.

22.      Liberty Counsel attorneys have also testified before countless state legislatures and administrative agencies concerning matters of religious freedom, the sanctity of human life, and family values.

23.      Liberty Counsel has affiliated ministries, including Liberty Counsel Action, LCAction PAC, Liberty Prayer Network, Liberty Relief International, Christians in Defense of Israel, and Covenant Journey.

24.     Liberty Counsel condemns violence of any kind, does not advocate for any group or individual to engage in any acts of violence, does not advocate for any unlawful activity, and does not condone any group or individual who engages in any such activity.

25.     Liberty Counsel seeks to advance its mission by lawful means through litigation, education, and public policy advocacy throughout the country and around the world.

26.     As a non-profit charitable entity, Liberty Counsel relies on its good reputation to attract and receive charitable donations from individuals, groups, churches, organizations, foundations, and others. As with other charitable organizations, these charitable donations are the lifeblood of Liberty Counsel's public support, and Liberty Counsel would not be able to exist or serve its clients, constituents and the public without such support.

27.     Liberty Counsel's reputation is important to its mission and to its donors or prospective donors.

28.     Liberty Counsel's long-standing relationships with its donors is made possible by its good name and reputation.

## GUIDESTAR

29.     GuideStar was formed on September 6, 1994 as Philanthropic Research, Inc., and in October 1996 received its tax-exempt status under 26 U.S.C. § 501(c)(3). *See* GuideStar USA, Inc., *History*, https://learn.guidestar.org/about-us/history (last visited June 28, 2017).

30.     In July 1996, GuideStar officially began publishing its "Directory of American Charities." *Id.*

31.     Since 1996, GuideStar has continued to increase the number of charities it reviews and discusses on the nonprofit profiles on its website. *Id.*

32.     Numerous state and national government bodies have used information published on GuideStar's website to consider and make various decisions related to nonprofit organizations. *Id.*

33.     Donors, both individuals and institutional, use GuideStar's directory and rely upon the information provided by GuideStar to make decisions about donations, grants, and funding requests with respect to the non-profit entities on which GuideStar provides its reports.

34.     GuideStar claims that its mission is to "revolutionize philanthropy by providing information that advances transparency, enables users to make better decisions, and encourages charitable giving." GuideStar USA, Inc., *About Us*, https://learn.guidestar.org/about-us/ (last visited June 28, 2017).

35.     GuideStar claims that it "gathers and disseminates information about every single IRS registered nonprofit organization" and that it aims to "provide as much information as [it] can about each nonprofit's mission, legitimacy, impact, reputation, finances, programs, transparency, governance, and so much more." *Id.*

36.     GuideStar states that it is not "a charity evaluator or watchdog," but merely a "public charity that collects, organizes, and presents the information you want in an easy-to-understand format," and, importantly, it claims to do so "while remaining neutral." *Id.*

37.     GuideStar claims it is "the search engine for non-profit information." *Id.*

**GUIDESTAR'S ADOPTION OF SPLC "HATE GROUP" DESIGNATIONS**

38.     In 2017, GuideStar adopted the SPLC's designation of certain nonprofit organizations as "hate groups" and began to prominently make representations of fact concerning these purported "hate groups" based solely on the SPLC's designation. A copy of GuideStar's

explanation of its adoption of the SPLC's "hate group" designations is attached hereto as Exhibit A and incorporated herein.

39.     GuideStar modified its description of 46 organizations, out of the 1,684,038 nonprofit organizations on which it claims to maintain profiles, to prominently display, at the top of each affected organization's profile, a banner indicating that the organization has been flagged as a "hate group" by the SPLC. A true and correct copy of Liberty Counsel's profile on GuideStar, featuring GuideStar's republication of the SPLC's "hate group" designation, is attached hereto as Exhibit B and incorporated herein.

40.     Jacob Harold, President and CEO of GuideStar, stated that GuideStar "added new information to the profiles of 46 of these organizations: **the fact** that they had been designated as hate groups by the Southern Poverty Law Center." Exhibit A (emphasis added).

41.     Mr. Harold said GuideStar's decision was based on GuideStar's "role in the nonprofit sector as being a hub of information about nonprofit organizations." *Id.*

42.     GuideStar stated that its decision to add the "hate group" label from the SPLC was based on its desire "to offer additional **data**." *Id.* (emphasis added).

43.     GuideStar has admitted that its purpose and motivation for the adoption of the SPLC's designation was financial and economic, because it "started to hear from customers who were worried they might facilitate a donation to a hate group," which Mr. Harold "define[s] as an organization that denigrates a group of people based on their identity." *Id.*

44.     GuideStar admitted that it was seeking to influence the consumers of its information in the decisions they make concerning donations to various nonprofit organizations. *Id.*

45.     Based on its alleged concerns, GuideStar began researching "potential partners from whom [it] could obtain data on hate groups." *Id.*

46.     GuideStar did this search because it allegedly "wanted to offer additional data." *Id.*

47.     GuideStar stated that it chose the SPLC to be its partner because it "emerged as the best option" and because it purportedly "has the most comprehensive information on hate groups that [GuideStar] could find." *Id.*

48.     GuideStar admitted its knowledge that there "are legitimate critiques of SPLC's analysis" and that the SPLC has been accused of "political bias." *Id.*

49.     Despite the criticisms and its admission that the SPLC's "data" is flawed, GuideStar proclaimed that it "intend[s] to continue using the SPLC as a data source." *Id.*

50.     Mr. Harold attributed GuideStar's decision to include the SPLC designation for a limited number of nonprofit organizations, including Liberty Counsel, as "a response to the recent rise in 'hateful rhetoric' in the U.S." CBSNews, *GuideStar, a website about charities, flags dozens of nonprofits as hate groups*, (Jun 8, 2017), http://www.cbsnews.com/news/guidestar-charity-website-flags-nonprofits-hate-groups/ (last visited June 28, 2017).

51.     Mr. Harold admitted that GuideStar's decision is "highly politicized in a highly politicized moment in history," admitted that GuideStar simply "relie[s] on the [SPLC's] list," and that GuideStar "did not conduct its own investigation of whether a nonprofit deserves to be labeled a hate group." *Id.*

52.     Nevertheless, despite all the criticisms concerning the SPLC's ideological designations, Mr. Harold said GuideStar is "making a judgment to trust that third party." *Id.*

53.     By making a judgement to trust the SPLC's designations, and relying on the SPLC as its exclusive "data source" for designating certain nonprofit organizations as "hate groups," GuideStar is relying on the SPLC as its exclusive source of **fact** on "hate groups."

54.    GuideStar's admitted desire to include relevant "data" (*i.e.*, facts) from the SPLC's "factual" determinations concerning certain nonprofit organizations demonstrates that GuideStar wanted to "obtain [facts] on hate groups" and that it "wanted to offer additional [facts]." *Id.*

55.    GuideStar's use of the term "hate group" as one element of purported "data" is therefore a purported assertion of fact, not opinion.

## SPLC'S "HATE GROUP" DESIGNATION

56.    The SPLC declares itself the "premier U.S. non-profit organization monitoring the activities of domestic hate groups and other extremists, including the Ku Klux Klan, the neo-Nazi movement, neo-Confederates, racist skinheads, black separatists, antigovernment militias, Christian identity adherents, and others." SPLC, *Fighting Hate*, https://www.splcenter.org/fighting-hate (last visited June 28, 2017).

57.    Among the "others" that SPLC recklessly lumps together with neo-Nazis and the KKK, are a large number of Christian organizations who advocate for Biblical and Christian principles in a lawful and peaceful manner, including Liberty Counsel, Family Research Council, Traditional Values Coalition, Alliance Defending Freedom, American Family Association, and Pacific Justice Institute. SPLC, *Hate Map*, https://www.splcenter.org/hate-map (last visited June 28, 2017).

58.    Mark Potok, Senior Fellow at the SPLC and editor of the Investigative Report that details the SPLC's "hate group" designations, admitted that the SPLC's criteria has nothing to do with the traditional understanding of hate groups, which requires criminality and violence directed at a specific group.

59.    Mr. Potok stated that when the SPLC lists nonprofit organizations as "hate groups," "**we're not predicting that they'll commit violence. We say very explicitly that we're listing**

**them on the basis of their ideology**.” Charlotte Allen, *King of Fearmongers: Morris Dees and the Southern Poverty Law Center, scaring donors since 1971* (Apr. 15, 2013), http://www.weeklystandard.com/king-of-fearmongers/article/714573 (last visited June 28, 2017) (emphasis added).

60.     Mr. Potok has stated unequivocally: “Our criteria for a ‘hate group,’ first of all, have nothing to do with criminality or violence or any kind of guess we’re making about this group could be dangerous. **It’s strictly ideological**.” Bill Holiday, Interview with Mark Potok at Track 9, https://archive.org/details/MarkPotok/Potok-6.aif (last visited June 21, 2017).

61.     Mr. Potok continued by stating that the SPLC’s point was to completely destroy the nonprofit organizations the SPLC characterizes as “hate groups.” He stated, “We see this political struggle, right. . . . **We’re trying to wreck the groups, and we are very clear in our head, this is – we are trying to destroy them . . . as a political matter, to destroy them**.” *Id.* at Track 13.

62.     Mr. Potok has also stated that this is the SPLC’s *raison d’etre*: “**Sometimes the press will describe [SPLC] as monitoring hate groups and so on. I want to say plainly that our aim is to destroy these groups, to completely destroy them**.” *See* Potok *supra* n.1.

63.     Mr. Potok also admitted that the SPLC’s efforts to “destroy” certain organizations is achieved by making purported “factual assertions.” He said, “And the way we learned to [destroy these groups], I think is personally cool, is **we use facts**.” *Id.*

64.     As Mr. Potok’s statements make abundantly clear, the SPLC’s designation of certain nonprofit organizations as “hate groups” is based on the SPLC’s determination of what is fact. Its assertion of the “hate group” label is thus a purported statement and representation of fact.

## THE FALSE AND MISLEADING NATURE OF THE SPLC'S "HATE GROUP" DESIGNATION

65.     Laird Wilcox, founder of the Wilcox Collection on Contemporary Political Movements at the University of Kansas's Kenneth Spencer Research Library and a leading expert on "extremist" organizations, has identified the false, misleading, and destructive nature of the SPLC's "hate group" designations.

66.     Mr. Laird has noted that the SPLC has gone into "ideological overdrive and has developed many of the destructive traits that characterize moral crusaders, including the demonization of critics and dissenters." Laird Wilcox, *An Expert on Fringe Political Movements Reflects on the SPLC's Political Agenda – An Exclusive Interview with Author and Researcher Laird Wilcox*, The Social Contract Press (Spring 2010), *available at* http://www.thesocialcontract.com/artman2/publish/tsc_20_3/tsc_20_3_wilcox_interview.shtml (last visited June 28, 2017).

67.     Mr. Laird stated that the "hate group" designations reflect a "kind of selective attention and biased reporting" that "simply illustrates [the SPLC's] unscrupulousness." *Id.*

68.     He continued that it is "**pretty hard to deny that the SPLC is a political operation that is trying to tar right-wingers and conservative Republicans**." *Id.* (emphasis added).

69.     Mr. Laird also noted that "[t]he dirty little secret behind the SPLC is that they actually *need* racial violence, growing 'hate groups,' and more racial crime to justify their existence and promote their agenda." *Id.* (emphasis original).

70.     Mr. Laird concluded, "When you get right down to it, all the SPLC does is call people names. It's specialized a highly developed and ritualized form of defamation, however—a way of harming and isolating people by denying their humanity and trying to convert them into something that deserves to be hated and eliminated." *Id.*

71.     He also noted that the SPLC's "victims are usually ordinary people expressing their values, opinions, and beliefs—and they're up against a very talented and articulate defamation machine." *Id.*

72.     Mr. Laird is not alone in his findings on the SPLC's reckless and ideological "hate group" label. Liberal commentators have also been harsh critics of the tactics employed by the SPLC in its ideological crusade.

73.     Alexander Cockburn, a columnist for the liberal publication The Nation, has labeled the SPLC and its leaders as "the archsalesmen of hatemongering." Alexander Cockburn, *King of the Hate Business* (Apr. 29, 2009), https://www.thenation.com/article/king-hate-business/ (last visited June 28, 2017).

74.     Mr. Cockburn noted that the SPLC represents nothing more than "hate-seekers scour[ing] the landscape for hate like the arms manufacturers inventing new threats, and for the same reason: it's their staple." *Id.*

75.     Other commentators researching the SPLC's "hate group" label have found that there is a "serious objection to the SPLC's hate list" because of "the loosey-goosey criteria by which the [SPLC] decides which organizations qualify as hate groups." *See* Allen *supra* ¶ 59.

76.     The SPLC has been charged with "being willing to slap the hate label on groups that may merely interpret data differently from the SPLC." *Id.*

77.     Foreign Policy Magazine has been harshly critical of SPLC's "hate group" label, noting, "The problem is that the SPLC and the ADL are not objective purveyors of data." J.M. Berger, *The Hate List: Is America really being overrun by right-wing militias*, Foreign Policy (Mar. 12, 2013), http://foreignpolicy.com/2013/03/12/the-hate-list/ (last visited June 28, 2017).

78.     Foreign Policy concluded that the methodology used by the SPLC is fundamentally flawed, and that "[i]f there is any lesson in all of this [hate group labeling], it's that the study of domestic American extremism shouldn't be the exclusive province of activists." *Id.*

79.     The Philanthropy Roundtable has noted the SPLC's "hate group" designation is "not a Consumer Reports Guide. It's a political tool." Karl Zinsmeister, *Some People Love To Call Names: The Southern Poverty Law Center's extremist list isn't a Consumer Report Guide: It's a political tool*, Philanthropy Roundtable: Excellence in Philanthropy, http://www.philanthropyroundtable.org/topic/excellence_in_philanthropy/some_people_love_to_call_names (last visted June 28, 2017).

80.     The Philanthropy Roundtable also noted that the SPLC is a "notoriously partisan attack group" and that its "hate group" designations are intended solely as a fundraising tool. *Id.*

81.     The Philanthropy Roundtable also noted that the "hate group" designations "spread stigmas just by innuendo" and that the SPLC has an "utter lack of any reasonable criteria for who goes on its lists." *Id.*

82.     The Philanthropy Roundtable concluded that "[i]t is entirely fair to disagree with any of these charities or individuals—but utterly unfair to insist they are hate criminals" merely because the SPLC disagrees with them. *Id.*

83.     It also concluded that the SPLC is a "bullying organization that aims to intimidate and even criminalize philosophical opponents" and that "the SPLC's tactics lead directly to hate and violence." *Id.*

84.     In 2016, the United States Department of Justice's Disciplinary Counsel for the Executive Office for Immigration Review (the "DOJ Disciplinary Counsel") sharply rebuked and reprimanded attorneys representing the SPLC and its allies for employing the SPLC's "hate group"

label to denigrate a conservative advocacy group and its attorneys engaged in advocacy in front of the Executive Office for Immigration Review. *See* DOJ Disciplinary Counsel Letter, March 28, 2016, attached hereto as Exhibit C and incorporated herein.

85. The DOJ Disciplinary Counsel concluded that employing the SPLC's "hate group" designation to denigrate attorneys and public interest groups engaged in advocacy on issues with which the SPLC disagrees "overstepped the bounds of zealous advocacy and was unprofessional." *Id*.

86. According to the DOJ Disciplinary Counsel, employing the SPLC's "hate group" designation to denigrate conservative public interest groups and their attorneys is "uncivil" and "**constitutes frivolous behavior** and does not aid the administration of justice." *Id*. (emphasis added).

## CONSEQUENCES OF THE SPLC'S FALSE, MISLEADING AND RECKLESS "HATE GROUP" DESIGNATION

87. Expert Laird Wilcox has observed of the SPLC that "[m]oralizing crusades that demonize and stereotype the opposition can be very damaging, even when they claim to be working on behalf of what objectively seems to be a 'good' cause—and the more venerated the cause the more excessive and extreme tactics are seen to be justified. Movements to right wrongs are very dangerous when they let the end justify the means." *See* Wilcox *supra* ¶ 66.

88. Other commentators have noted that "[w]hen an organization as prominent and powerful as the SPLC turns its guns on you, it can cost you your job, your livelihood – even your standing in the community. *Not* because you have done anything wrong. *Not* because what they say about you is true, but because a focused vilification campaign forces others to avoid you out of fear. You become what they call 'radioactive.'" James Simpson, *Southern Poverty Law Center – Manufacturing Hate for Fun and Profit* (Feb. 16, 2016), http://www.breitbart.com/big-

government/2016/02/16/southern-poverty-law-center-manufacturing-hate-for-fun-and-profit/ (last visited June 28, 2017).

89.     The consequences of the SPLC's "hate group" designation are far from theoretical, and have resulted in despicable acts of violence against groups recklessly designated as "hate groups" for nothing more than their position and Christian viewpoint on certain issues.

90.     In 2012, Floyd Corkins II attempted to commit mass murder in the Washington D.C. office of Family Research Council. During an FBI interrogation of Corkins, he confessed that he intended to commit mass murder and that his motivation for doing so was based on the SPLC's designation of the Family Research Council as a "hate group." Family Research Council, *Confessed Terrorist Floyd Corkins Admits to Using SPLC Target List*, YouTube (Apr. 24, 2014), https://www.youtube.com/watch?v=hgjI3wavx-I (last visited June 28, 2017).

91.     Corkins also admitted that he became aware of Family Research Council by looking at the SPLC's "hate group" designations and "hate map" that provides the addresses of those nonprofit organizations labeled as "hate groups." *Id.*

92.     On June 15, 2017, James Hodgkinson attempted to commit mass murder of Republican members of Congress and their staff. Congressman Steve Scalise was critically injured in that shooting, as were several other congressional staffers.

93.     Hodgkinson followed the SPLC on Facebook and admitted to targeting Republicans in his attempted mass murder. *Scalise critical, shooter ID'd as James Hodgkinson*, FoxNews (June 14, 2017), http://www.foxnews.com/us/2017/06/14/virginia-gop-baseball-practice-shooting-multiple-people-shot.html (last visited June 28, 2017).

94.     As a fan of SPLC's website and a follower of its "hate group" designations, Hodgkinson was likely aware of the SPLC's attempts to link Congressman Scalise to groups that

the SPLC designates as "hate groups." The SPLC's efforts to link Congressman Scalise date back to at least 2014. *See* Mark Potok, *Steve Scalise's Denials Are Not Believable*, Southern Poverty Law Center, Hatewatch (Dec. 30, 2014), https://www.splcenter.org/hatewatch/2014/12/30/steve-scalise%E2%80%99s-denials-are-not-believable (last visited June 28, 2017).

95.     Liberty Counsel staff have received death threats, and Liberty Counsel has been required to expend funds to install security systems, surveillance cameras, and from time to time retains private security for personal protection.

96.     As these incidents demonstrate, the SPLC's false and misleading "hate group" designation has serious consequences and extremists have relied upon the SPLC's dangerous labeling of nonprofit organizations and individuals to commits acts of terrorism and violence against innocent people and organizations.

## GUIDESTAR'S PROFILE OF LIBERTY COUNSEL

97.     Despite all of the evidence that the SPLC's "hate group" designations are strictly ideological, not based on any objective criteria, designed solely to "completely destroy" organizations that the SPLC disagrees with, and have resulted in attempted mass murder of individuals at organizations so designated, GuideStar has chosen to adopt and prominently republish the SPLC's "hate group" designation as part of its purported representations of fact concerning Liberty Counsel.

98.     At the top of GuideStar's profile of Liberty Counsel, GuideStar included a red banner with the SPLC logo and a headline stating that "This organizations was flagged as a hate group by the Southern Poverty Law Center." *See* Exhibit B.

99.     By making a judgement to trust the SPLC's designations, and relying on the SPLC as its exclusive "data source" for designating Liberty Counsel as a "hate group," GuideStar is making a factual representation that Liberty Counsel is a "hate group."

100.    GuideStar's admitted desire to include relevant "data" (*i.e.*, facts) from the SPLC's "factual" determinations concerning Liberty Counsel demonstrates that its intention was to include certain purported "facts" about Liberty Counsel.

101.    GuideStar's use of the term "hate group" as one element of data is therefore an assertion of fact, not opinion.

102.    On June 23, 2017, GuideStar announced that it was going to remove the "hate group" designation from the profiles of the 46 organizations it has previously chosen to denigrate. *See Update Regarding SPLC Flags on GuideStar Nonprofit Profiles*, attached as Exhibit D and incorporated herein, available at https://learn.guidestar.org/news/news-releases/update-regarding-splc-flags-on-guidestar-nonprofit-profiles (last visited June 28, 2017).

103.    While GuideStar impliedly acknowledged the flaws inherent in SPLC's purported "data," GuideStar blamed its decision to drop the "hate group" designations on purported "harassment and threats directed at our staff and leadership" allegedly causing GuideStar to have "concerns for our staff's wellbeing." *Id.*

104.    GuideStar has therefore neither abandoned, nor retracted, nor remedied its defamatory publications regarding Liberty Counsel. Instead, it has made those defamatory publications worse, by falsely implying that Liberty Counsel and other so-called "hate groups" are now threatening or causing others to threaten violence against GuideStar.

105.    Moreover, GuideStar has indicated that it will continue to publish and republish the SPLC's false and misleading "hate group" designation to the public "on request."

## GUIDESTAR'S INTENT IN TARGETING LIBERTY COUNSEL

106.     As GuideStar's President and CEO made abundantly clear, GuideStar's intention in adopting the SPLC's "hate group" designations and representing them as fact on GuideStar's profiles of nonprofit organizations, including Liberty Counsel, was to address and provide "a response to the recent rise in 'hateful rhetoric' in the U.S." *See* CBSNews *supra* ¶ 50.

107.     GuideStar also stated unequivocally that GuideStar was representing the SPLC's designations as fact and that it was keenly aware that its decision was political. As Mr. Harold stated, GuideStar's decision is "unique in that it's highly politicized in a highly politicized moment in history." *Id.*

108.     GuideStar also admitted that it was adopting the SPLC's "hate group" designations and representing them as fact because of GuideStar's "broader shift in how [GuideStar] imagines [its] role in the (nonprofit) field." *Id.*

109.     GuideStar also admitted that its justification for adopting the SPLC's "hate group" designation was because it thought the SPLC was the "best option" available, even though it was aware of the political bias of the SPLC. *See* Exhibit A at 2.

110.     GuideStar's motivation for adopting the SPLC's "hate group" designation also arises from its shared ideology with the SPLC.

111.     While purporting to be a "neutral" evaluator of nonprofit organizations, GuideStar has injected raw liberal political ideology into its profile of Liberty Counsel.

112.     GuideStar not only adopted SPLC's designation of "hate group" for its profile of Liberty Counsel, but shares the same definition of a "hate group" as the SPLC. *Compare* Exhibit A at 2 (defining "hate group" strictly in terms of ideology of a particular group), *with* Allen *supra*

¶ 59 and Holiday *supra* ¶ 60 (quoting the SPLC as defining "hate groups" solely based on the group's ideology).

113.    By adopting the SPLC's designation of Liberty Counsel as a "hate group," and adopting the same definition as the SPLC, GuideStar has demonstrated its shared political ideology with the SPLC and its identical approach to designating organizations as "hate groups."

114.    GuideStar's President and Chief Executive Officer, the GuideStar official responsible for defending GuideStar's adoption of the SPLC's "hate group" designation, has also demonstrated his liberal political ideology countless times. *See* GuideStar USA, Inc.*, Leadership Team*, https://learn.guidestar.org/about-us/management-team (last visited June 28, 2017) (noting that Mr. Harold is devoted to liberal political causes, such as climate change and has worked for Greenpeace USA, Rainforest Action Network, and Citizen Works).

115.    Mr. Harold is a vocal and public advocate for abortion and is a financial supporter of pro-abortion organizations, such as the liberal group NARAL (National Abortion Rights Action League) Pro-Choice America. Jacob Herald Twitter, @jacobherald (Jan. 23, 2017), https://twitter.com/jacobcharold/status/823534419667517441/photo/1 (last visited June 28, 2017) (showing a picture of Mr. Harold at the "Women's March" in 2017 that was attended by activists opposed to President Trump and overtly supporting abortion); *Id.* (showing Mr. Harold holding a sign that said, "It turns out FACTS MATTER"); Men For Choice (Sept. 30, 2014), https://act1.myngp.com/Uploads/10000/images/Men%20For%20Choice%20DC%20Invitation_9 _25.jpg (last visited June 28, 2017) (noting that Mr. Harold was a host of the DC Men For Choice event that was sponsored by the liberal group, NARAL Pro-Choice America).

116.    Mr. Harold and GuideStar are also vocal supporters of LGBT rights and causes. Jacob Herald Twitter, @jacobherald (Apr. 27, 2017), https://twitter.com/jacobcharold (posting a

story from GuideStar:Blog supportive of homosexual and transgender positions) (last visited June 28, 2017).

117.    Mr. Harold has stated that GuideStar attempts to "[t]urn data on nonprofits into a story about social change." Jacob Harold Twitter, @jacobherald (Mar. 24, 2017), https://twitter.com/jacobcharold/status/845378076343242753 (last visited June 28, 2017).

118.    Mr. Herald considers himself a "social change strategist" and so declares on his GuideStar bio. *See Leadership Team supra* ¶ 114.

119.    Mr. Herald has brought his personal political agenda into GuideStar and now GuideStar has become a politically-motivated organization using false, defamatory, and dangerous labels to harm nonprofit organizations, including Liberty Counsel, with which GuideStar and Mr. Herald disagree based on their different ideologies.

120.    Mr. Herald and GuideStar's shared political ideology with the SPLC seeks to diminish the opposing viewpoints and positions advanced by Liberty Counsel, namely religious liberty, the sanctity of human life, human sexuality, and family values.

121.    Based on its shared political ideology with the SPLC, GuideStar recklessly adopted the SPLC's designation of Liberty Counsel as a "hate group" based purely on its ideological opposition to Liberty Counsel.

122.    GuideStar's adoption of SPLC's designation of Liberty Counsel as a "hate group" and the two groups' unquestionably shared political ideology evidences that GuideStar shares SPLC's stated intention to "completely destroy" Liberty Counsel and other conservative groups.

## LIBERTY COUNSEL'S INJURIES FROM GUIDESTAR PROFILE

123.    GuideStar's representation of fact concerning Liberty Counsel as a "hate group" is false, misleading, and deceitful to Liberty Counsel's potential donors, and has the tendency to

deceive all consumers of GuideStar's commercially available website, including Liberty Counsel donors and potential donors.

124. GuideStar's false and deceitful labeling of Liberty Counsel as a "hate group" has been written about in numerous newspaper, media, and internet reports from news agencies, blogs, and organizations. *See* CBSNews *supra* ¶ 50; Rachel del Guidice, *Nonprofit Tracker Smears Dozens of Conservative Organizations as 'Hate Group'*, The Daily Signal (June 21, 2017), http://dailysignal.com/2017/06/21/nonprofit-tracker-smears-dozens-of-conservative-organizations-as-hate-groups/ (last visited June 28, 2017); Dawn Ennis, *This guide to charities is now flagging dozens of hate groups*, LGBTQNation (June 14, 2017), https://www.lgbtqnation.com/2017/06/guide-charities-now-flagging-dozens-hate-groups/ (last visited June 28, 2017).

125. The damage caused by GuideStar's false, misleading, and deceitful designation of Liberty Counsel as a "hate group" is also permanently etched in the history of GuideStar. *See, e.g.*, GuideStar, WIKIPEDIA, https://en.m.wikipedia.org/wiki/GuideStar (last visited June 27, 2017).

126. GuideStar's false, misleading, and deceitful designation of Liberty Counsel as a "hate group" is now spread throughout the media and the worldwide web.

127. While GuideStar has temporarily removed the "hate group" warning label on Liberty Counsel's profile, it has maintained that such a decision is only "for the time being." *See* Exhibit D.

128. However, GuideStar has also stated that it "will make ["hate group"] information available to any user on request" and thus will continue to disseminate the false, misleading, and deceitful designation of Liberty Counsel as a "hate group." *Id.*

129.    GuideStar also admits that it will be continuing to look for additional ways to share this information because it claims providing it "is in line with our mission." *Id.*

130.    By being deceitfully and falsely labeled as a "hate group" on GuideStar's profile, Liberty Counsel has suffered, is suffering, and will continue to suffer actual damage to its reputation, good name, and standing in the community of nonprofit organizations.

131.    By being deceitfully and falsely labeled as a "hate group" on GuideStar's profile, Liberty Counsel has suffered, is suffering, and will continue to suffer actual damage to its reputation, good name, and standing with its donors.

132.    By being deceitfully and falsely labeled as a "hate group" on GuideStar's profile, Liberty Counsel has suffered, is suffering, and will continue to suffer actual damage to its reputation, good name, and standing with its potential donors.

133.    By being deceitfully and falsely labeled as a "hate group" on GuideStar's profile, Liberty Counsel is likely to suffer actual damage to its reputation, good name, and standing with potential donors in the future.

134.    By being deceitfully and falsely labeled as a "hate group" on GuideStar's profile, Liberty Counsel has suffered actual damages in its ability to receive donations from donors and potential donors.

135.    Donors, both individuals and institutional, use GuideStar's directory and rely upon the information provided by GuideStar to make decisions about donations, grants, and funding requests with respect to the non-profit entities on which GuideStar provides its reports.

136.    Donors have relied upon GuideStar's false and misleading "hate group" designation to refuse, cease, or divert donations from the falsely designated groups. Such harm is ongoing, and

will continue until GuideStar is enjoined from further publishing and republishing, whether "on request" or otherwise, the false and misleading "hate group" designations.

137.    Donations to Liberty Counsel have and will be negatively affected by GuideStar's false, misleading, and deceitful designation of Liberty Counsel as a "hate group," including donations from individuals, matching corporate employee donations, and donations from foundations, churches, nonprofit organizations, corporate, and educational organizations.

138.    Liberty Counsel's mission of providing pro bono legal representation to many individuals, churches, nonprofit and for profit corporations, and government agencies and political subdivisions has and will be directly harmed and hindered because of GuideStar's false, misleading, and deceitful designation of Liberty Counsel as a "hate group."

## COUNT I – VIOLATION OF THE LANHAM ACT
## 15 U.S.C. § 1125

139.    Liberty Counsel hereby reiterates and adopts each and every allegation in paragraphs 1-138.

140.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was made on its website, discussed by GuideStar in nationwide media articles, and explained on GuideStar's blog, and its representation of fact concerning Liberty Counsel as a "hate group" was therefore commercial in nature.

141.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" misrepresents the nature, character, and qualities of Liberty Counsel and the services and goods it provides.

142.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was made in reference to Liberty Counsel as an organization and in terms of the specific services it provides.

143.    GuideStar has an economic incentive for the adoption and republication of SPLC's designation of Liberty Counsel as a "hate group," and has admitted that it was made in connection with questions and concerns from its financially contributing members and subscribers.

144.    GuideStar's relationship with nonprofit organizations, including Liberty Counsel, is commercially competitive.

145.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was made for the purpose of influencing consumers' decisions concerning Liberty Counsel's good and services.

146.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was disseminated sufficiently to the relevant purchasing public.

147.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" is a false and misleading description of fact.

148.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" is a false and misleading representation of fact.

149.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" implies a knowledge of facts which lead to the conclusion that GuideStar's representation of Liberty Counsel is true and factual.

150.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" is material and is likely to cause confusion, to cause mistake, and to deceive Liberty Counsel's donors, potential donors, and individuals looking for information about Liberty Counsel on GuideStar's profile page.

151.     GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" has actually deceived Liberty Counsel donors and potential donors, as well as other individuals who visit GuideStar's profile of Liberty Counsel.

152.     GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" has a tendency to deceive a substantial segment of Liberty Counsel's donors and potential donors, as well as other individuals who visit GuideStar's profile of Liberty Counsel.

153.     GuideStar's website and profiles of nonprofit organizations, including Liberty Counsel, are channels and instrumentalities of interstate commerce and represent an activity that substantially affects interstate commerce.

154.     As a result of GuideStar's conduct, Liberty Counsel has suffered, is suffering, and will continue to suffer injury to its reputation and goodwill with its donors, potential donors, and standing in the nonprofit community.

155.     As a result of GuideStar's conduct, Liberty Counsel has suffered, is suffering, and will continue to suffer injury to its financial support from donors and potential donors.

156.     As a result of GuideStar's conduct, Liberty Counsel is likely to suffer injury to its financial support from donors and potential donors.

157.     Liberty Counsel's injury and likely future injury to its reputation, goodwill, and standing in the nonprofit community is caused by GuideStar's false and misleading representations of fact that Liberty Counsel is a "hate group."

WHEREFORE, Liberty Counsel respectfully prays for the relief against GuideStar as hereinafter set forth in its prayer for relief.

## COUNT II – INTERFERENCE WITH BUSINESS EXPECTANCY
### Virginia Common Law

158.   Liberty Counsel reiterates and adopts each and every allegation in paragraphs 1-138.

159.   Liberty Counsel has specific and existing business relationships with its current and consistent contributors and donors.

160.   Liberty Counsel has a specific and existing business expectancy from its existing donors to continue to support the activities and mission of Liberty Counsel.

161.   Liberty Counsel has a specific and existing opportunity to reach additional donors through its fundraising efforts, outreach, and exceptional services.

162.   Liberty Counsel has a specific and direct economic interest in the continued support from its donors and potential donors.

163.   As a nonprofit organization and the purported leader in nonprofit information, GuideStar is unquestionably aware of the specific and existing business relationship and expectancy that Liberty Counsel has from its donors and potential donors.

164.   GuideStar also has actual knowledge of Liberty Counsel's specific and existing business relationship and expectancy with its donors and potential donors, as it has reviewed and posted financial information submitted to the Internal Revenue Service concerning Liberty Counsel's donations and financial records.

165.   GuideStar's adoption and republication of SPLC's false and misleading designation of Liberty Counsel as a "hate group" is an intentional interference with Liberty Counsel's specific and existing business relationship and expectancy with its donors and potential donors.

166.   GuideStar's adoption and republication of SPLC's false and misleading designation of Liberty Counsel as a "hate group" is designed and intended to cause a termination of the specific

and existing business relationship and expectancy that Liberty Counsel has with its donors and potential donors.

167.    As a result of GuideStar's conduct, Liberty Counsel has suffered, is suffering, and will continue to suffer injury to its reputation and goodwill with its donors, potential donors, and standing in the nonprofit community.

168.    As a result of GuideStar's conduct, Liberty Counsel has suffered, is suffering, and will continue to suffer injury to its financial support from donors and potential donors.

169.    As a result of GuideStar's conduct, Liberty Counsel is likely to suffer injury to its financial support from donors and potential donors.

170.    Liberty Counsel's injury and likely future injury to its reputation, goodwill, and standing in the community is caused by GuideStar's false and misleading representations of fact that Liberty Counsel is a "hate group."

WHEREFORE, Liberty Counsel respectfully prays for the relief against GuideStar as hereinafter set forth in its prayer for relief.

## COUNT III – DEFAMATION
### Virginia Common Law

171.    Liberty Counsel reiterates and adopts each and every allegation in paragraphs 1-138.

172.    GuideStar's placement of the SPLC's designation of Liberty Counsel as a "hate group" at the top of Liberty Counsel's GuideStar profile is a publication of a statement of fact.

173.    GuideStar's placement of the SPLC's designation of Liberty Counsel as a "hate group" at the top of Liberty Counsel's GuideStar profile is also a republication of a statement of fact from the SPLC.

174.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" is a false and misleading representation of fact.

175.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" is a false and misleading representation of fact that tends to harm, and does indeed harm, Liberty Counsel's reputation and goodwill and lowers Liberty Counsel's standing in the nonprofit community and with its donors and potential donors.

176.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was published with the requisite intent to harm Liberty Counsel's reputation and goodwill with its donors, potential donors, and its standing in the nonprofit community.

177.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was published with actual malice towards Liberty Counsel because of GuideStar's ideological opposition to Liberty Counsel.

178.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was published with actual knowledge of the falsity of the representation of fact that Liberty Counsel is a "hate group."

179.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was published with reckless disregard for the truth of the representation of fact that Liberty Counsel is a "hate group."

180.    GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" was published with a high degree of awareness as to the probably of its falsity.

181.    As a result of GuideStar's conduct, Liberty Counsel has suffered, is suffering, and will continue to suffer injury to its reputation and goodwill with its donors and potential donors.

182. As a result of GuideStar's conduct, Liberty Counsel has suffered, is suffering, and will continue to suffer injury to its financial support from donors and potential donors.

183. As a result of GuideStar's conduct, Liberty Counsel is likely to suffer injury to its financial support from donors and potential donors.

184. Liberty Counsel's injury and likely future injury to its reputation, goodwill, and standing in the community is caused by GuideStar's false and misleading representations of fact that Liberty Counsel is a "hate group."

**PRAYER FOR RELIEF**

WHEREFORE, Liberty Counsel respectfully prays for judgment as follows:

A. That this Court declare that GuideStar's publication of the false and misleading representation of fact that Liberty Counsel is a "hate group" violates the Lanham Act, 15 U.S.C. § 1125(a);

B. That this declare that GuideStar's publication of the false and misleading representation of fact that Liberty Counsel is a "hate group" tortiously interfered with Liberty Counsel's business expectancy under the common law of the Commonwealth of Virginia;

C. That this Court declare that GuideStar's publication of the false and misleading representation of fact that Liberty Counsel is a "hate group" defamed Liberty Counsel and was done with actual malice in violation of the common law of the Commonwealth of Virginia;

D. That this Court issue a permanent injunction enjoining GuideStar, its officers, agents, servants, employees, and all other persons acting in active concert or participation with GuideStar from further dissemination of the false, misleading, and defamatory representation of fact that Liberty Counsel is a "hate group";

E.      That this Court award Liberty Counsel all appropriate actual, compensatory, and pecuniary damages resulting from GuideStar's false, misleading, and defamatory representation of fact that Liberty Counsel is a "hate group";

F.      That this Court award Liberty Counsel all appropriate reputational damages resulting from GuideStar's false, misleading, and defamatory representation of fact that Liberty Counsel is a "hate group";

G.      That this Court award Liberty Counsel all reasonable attorney's fees and costs, in accordance with 15 U.S.C. §1117(a); and

H.      That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Dated: June 28, 2017          Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid (VA Bar No. 84415)
Mary E. McAlister (VA Bar No. 76057)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: dschmid@LC.org

*Attorneys for Plaintiff Liberty Counsel, Inc.*

*Application for admission *pro hac vice* forthcoming