**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| **LIBERTY COUNSEL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. <u>4:17-cv-71-RAJ-DEMVAED</u>** |
| | ) | |
| **GUIDESTAR USA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF LIBERTY COUNSEL, INC.'S RESPONSE IN <br> <u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Mathew D. Staver*  
Horatio G. Mihet*  
Roger K. Gannam*  
LIBERTY COUNSEL  
P.O. Box 540774  
Orlando, FL 32854  
Phone: (407) 875-1776  
Facsimile: (407) 875-0770  
Email: court@LC.org  

Daniel J. Schmid (VA Bar No. 84415)  
Mary E. McAlister (VA Bar No. 76057)  
LIBERTY COUNSEL  
P.O. Box 11108  
Lynchburg, VA 24506  
Phone: (407) 875-1776  
Facsimile: (407) 875-0770  
Email: dschmid@LC.org  

*Admitted pro hac vice

*Attorneys for Plaintiff Liberty Counsel, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES.........................................................................................iv

INTRODUCTION...........................................................................................................1

LEGAL ARGUMENT....................................................................................................3

I.     LIBERTY COUNSEL HAS SUFFICIENTLY PLEADED A VIOLATION OF
THE LANHAM ACT. ..............................................................................................5

     A.    Liberty Counsel Has Sufficiently Pleaded That GuideStar's Adoption and
Republication Of SPLC's "Hate Group" Designation Was
Commercial In Nature..............................................................................5

          1.    Liberty Counsel's Allegations Demonstrate that GuideStar's
Adoption and Republication of SPLC's "Hate Group"
Designation Was Commercial Speech........................................6

               a.    GuideStar's adoption and republication of SPLC's "hate
group" designation constitutes an advertisement or
promotion........................................................................7

               b.    GuideStar's adoption and republication of SPLC's "hate
group" designation specifically refers to Liberty
Counsel's services. ........................................................7

               c.    GuideStar has an economic motivation for its adoption and
republication of SPLC's "hate group" designation...........8

               d.    Consumers are likely to perceive GuideStar's adoption and
republication of SPLC's "hate group" designation as
influencing transactions with Liberty Counsel..............10

          2.    Liberty Counsel's Allegations Demonstrate that GuideStar and
Liberty Counsel Are Commercial Competitors........................11

               a.    Direct competition between Liberty Counsel and GuideStar
is not necessary for the organizations to be commercially
competitive...................................................................11

               b.    GuideStar and Liberty Counsel's relationship is sufficiently
competitive in the nonprofit market................................13

3.      Liberty Counsel's Allegations Demonstrate that GuideStar's
        Adoption and Republication of SPLC's "Hate Group" Designation
        was Intended for the Purpose of Influencing Consumer Decisions
        Concerning Liberty Counsel's Services.....................................................13

4.      Liberty Counsel's Allegations Demonstrate that GuideStar's
        Adoption and Republication of SPLC's "Hate Group" Designation
        Was Sufficiently Disseminated to the Relevant Purchasing Public............15

B.  Liberty Counsel Has Sufficiently Pleaded That GuideStar's Adoption And
    Republication Of SPLC's "Hate Group" Designation Is A False And
    Misleading Representation Of Fact.......................................................................15

1.      GuideStar's Adption and Republication of SPLC's "Hate Group"
        Designation was a False and Misleading Representation of Fact...............16

2.      GuideStar's False and Misleading Representation of Fact was
        Commercial in Nature.................................................................................17

3.      GuideStar's False and Misleading Representation of Fact was
        Material and Likely to Influence Consumer Decisions..............................18

4.      GuideStar's False and Misleading Representation of Fact Actually
        Deceives and Has the Tendency to Deceive Consumers............................19

        a.      GuideStar's representation is literally false...................................20

        b.      GuideStar's representation has a tendency to deceive...................20

5.      GuideStar's False and Misleading Representation of Fact was
        Placed in Interstate Commerce...................................................................22

6.      Liberty Counsel Has Suffered and is Likely to Suffer Injury as a
        Result of GuideStar's False and Misleading Representation of Fact..........22

II.  LIBERTY COUNSEL HAS SUFFICIENTLY PLEADED A CLAIM FOR
     TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY..............................23

A.  Liberty Counsel Has Sufficiently Pleaded The Existence Of A Business
    Expectancy...........................................................................................................24

B.  Liberty Counsel Has Sufficiently Pleaded that GuideStar Had Knowledge
    of Liberty Counsel's Business Expectancy. ........................................................25

C.      Liberty Counsel Has Sufficiently Pleaded GuideStar's Intentional
        Interference With Liberty Counsel's Business Expectancy...................................26

D.      Liberty Counsel Has Sufficiently Pleaded Improper Methods.............................27

E.      Liberty Counsel Has Sufficiently Pleaded Injury................................................28

III.    LIBERTY COUNSEL HAS SUFFICIENTLY PLEADED A CLAIM FOR
        DEFAMATION. ...................................................................................................28

A.      Liberty Counsel Has Sufficiently Pleaded Publication. ........................................28

B.      Liberty Counsel Has Sufficiently Pleaded That GuideStar's Adoption And
        Republication Of SPLC's "Hate Group" Designation Is A False And
        Actionable Statement Of Fact Harmful To Liberty Counsel's
        Reputation..........................................................................................................28

        1.      Liberty Counsel has Sufficiently Alleged that GuideStar's
                Defamatory "Data" was a Statement Fact, and GuideStar Cannot
                Now Couch it as Mere Opinion..................................................................29

        2.      Liberty Counsel has Sufficiently Alleged that GuideStar's
                Defamatory Statement was False.................................................................31

C.      Liberty Counsel Has Sufficiently Pleaded That GuideStar Adopted And
        Republished SPLC's "Hate Group" Designation With Knowledge Of Its
        Falsity Or With Reckless Disregard For Its Truthfulness.....................................32

CONCLUSION.................................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*A.J. Canfield Co. v. Honickman*, 808 F.2d 291 (3d Cir. 1986)........................................................19

*Am. Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.*,
820 F. Supp. 1072 (N.D. Ill. 1993) ..............................................................................................7

*Appleyard v. Transamerican Press, Inc.*, 539 F.2d 1026 (4th Cir. 1976) .....................................34

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................3

*AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496 (W.D. Va. 2013).................................22

*Beattie v. Skyline Corp.*, 906 F. Supp. 2d 528 (S.D.W.V. 2012).....................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). .....................................................................3, 4

*Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) ...................................................30

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983). .......................................................6, 7

*Boykin Anchor Co., Inc. v. AT&T Corp.*, 825 F. Supp. 2d 706 (E.D.N.C. 2011).........................22

*Brendle v. General Tire & Rubber Co.*, 505 F.2d 243 (4th Cir. 1974)..........................................25

*CACI Premier Tech., Inc. v. Rhodes*, 536 U.S. 280 (4th Cir. 2008) ........................................33, 34

*Camreta v. Greene*, 563 U.S. 692 (2011) ...................................................................................25

*Capital Square Rev. & Advisory Bd v. Pinette*, 515 U.S. 753 (1995) ...........................................16

*Cashmere & Camel Hair Mfrs. Inst. v. Sakes Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002)...........18, 19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm.*, 447 U.S. 557 (1980)...........................9, 10

*Chao v. Rivendell Woods, Inc.*, 415 F.3d 342 (4th Cir. 2005) ..................................................4, 10

*Chapin v. Knight-Rider, Inc.*, 993 F.2d 1087 (4th Cir. 1993) .........................................28, 29, 31

*Chaves v. Johnson*, 335 S.E.2d 97 (Va. 1985) .............................................................................25

*Cianci v. New Time Publ'g Co.*, 639 F.2d 54 (2d Cir. 1980) ........................................................31

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ..............................................9

*Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24 (1st Cir. 2000)...............18

*Commercial Bus. Sys., Inc. v. Hallifax Corp.*, 484 S.E.2d 892 (Va. 1997) ....................24

*Commercial Funding Corp. v. Worldwide Sec. Serv. Corp.*,
249 F.3d 204 (4th Cir. 2001).........................................................................................23, 26, 27

*Curtis Publ'g Co. v. Butts*, 308 U.S. 130 (1966) .........................................................33

*Dangerfield v. WAVY Broad., LLC*, 228 F. Supp. 3d 696 (E.D. Va. 2017)...................31

*Dastar Corp. v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23 (2003)....................19, 22

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495 (4th Cir. 2015)....................21

*Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724 (W.D. Va. 2012) ................................16

*Dykes v. Portfolio Recovery Assoc., LLC*, 111 F. Supp. 3d 739 (E.D. Va. 2015)............................4

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002).................12

*Fayetteville Investors v. Comm. Builders, Inc.*, 936 F.2d 1462 (4th Cir. 1991)..............................4

*Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623 (W.D. Tex. 2013).................16

*Gazette, Inc. v. Harris*, 325 S.E.2d 713 (Va. 1985).........................................................29

*Gordon & Breach Science Publ'rs v. Am. Inst. of Physics*,
859 F. Supp. 1521 (S.D.N.Y. 1994) ..........................................................................*passim*

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*,
721 F.3d 264 (4th Cir. 2013) ....................................................................................*passim*

*Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785 (6th Cir. 2015) ........................................12

*Handsome Brook Farm, LLC v. Humane Animal Care, Inc.*,
193 F. Supp. 3d 556 (E.D. Va. 2016). ......................................................................*passim*

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989)...........................33

*Huntington Life Sciences, Inc. v. Rokke*, 978 F. Supp. 662 (E.D. Va. 1997)............................9, 11

*Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*,
329 F.3d 359 (4th Cir. 2003).........................................................................................17

*Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992) ......................................25

*Kenyatta v. Moore*, 623 F. Supp. 220 (S.D. Miss. 1985) ................................................16

*Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013) ...........................25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)....................*passim*

*Maximum, Inc. v. Lockheed Mgmt Info Sys. Co.*, 493 S.E.2d 375 (Va. 1997)...................24, 26, 27

*Milkovich v. Lorain Jounral Co.*, 497 U.S. 1 (1990) ................................................30, 31

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) ................................19, 20, 21

*NAACP v. Alabama*, 357 U.S. 449 (1958) ....................................................................25

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008).............................18

*Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997)...........................19

*New Life Ctr., Inc. v. Fessio*, 229 F.3d 1143 (4th Cir. 2000) ................................34, 35

*N.Y. Times Co. v. Sullivan*, 376 U.S. 256 (1964) ....................................................33

*PMB Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011)........................15, 19, 20

*Powers v. Clarke*, No. 3:11CV763-HEH, 2014 WL 6982475 (E.D. Va. Dec. 9, 2014)................16

*Proctor & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 113 (2d Cir. 1984)........................21

*Qualitex Co. v. Jacobsen Prod. Co., Inc.*, 514 U.S. 159 (1995)...........................................22

*Radiance Found., Inc. v. NAACP*, 786 F.3d 316 (4th Cir. 2015) ...........................................*passim*

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ...................................................................29

*Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980) .......................................................34, 35

*Schnare v. Ziessow*, 104 F. App'x 847 (4th Cir. 2004) ..............................................31

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002) ...........................15, 19

*Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108 (6th Cir. 1995) ................................................7

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996) ......................................14

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) .......................18

*Southprint, Inc. v. H3, Inc.*, 208 F. App'x 249 (4th Cir. 2006) ........................................................24

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ........................................................34, 35

*Stephens v. Cnty. of Albermarle*, Civ. A.3:04CV00081,
2005 WL 3533428 (W.D. Va. Dec. 22, 2005) ........................................................25

*Tao of Sys. Integration, Inc. v. Analytical Serv. & Materials, Inc.*,
299 F. Supp. 2d 565 (E.D. Va. 2004)........................................................13

*T.G. Slater & Son., Inc. v. Donald P. & Patricia A. Brennan LLC*,
385 F.3d 836 (4th Cir. 2004) ........................................................24

*Timeline, Inc. v. Proclarity Corp.*, No. C05-1013JLR,
2006 WL 6143242 (W.D. Wash. Jun 29, 2006) ........................................................30

*Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 1191267 (S.D. Fla. Mar. 16, 2015)..............12

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981)..........................................4

*Veridyen Corp. v. United States*, 758 F.3d 1371 (Fed. Cir. 2014) ..................................................30

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272 (2d Cir. 1981) ........................................21

*Virginia v. Black*, 538 U.S. 343 (2003) ........................................................16

*Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604 (E.D. Va. 2005) ........................................................32

*Young v. City of Louisville*, 7 F.3d 237 (6th Cir. 1993) ................................................................16

## STATUTES

15 U.S.C. § 1125(a)(1)(B). ........................................................*passim*

Fed. R. Civ. P. 8........................................................3

Fed. R. Civ. P. 12........................................................4

## OTHER

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)..........4

*Black's Law Dictionary* 1529 (9th ed. 2009) ........................................................17

*Data Definition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/data.............30

Restatement (Second) of Torts § 766 cmt. j.................................................................................26

Restatement (Second) of Torts § 559.........................................................................................29

**PLAINTIFF LIBERTY COUNSEL, INC'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to Local Civil Rule 7(F)(1), Plaintiff, Liberty Counsel, Inc. ("Liberty Counsel"),

by and through the undersigned counsel, hereby submits its Response in Opposition to Defendant,

GuideStar USA, Inc.'s ("GuideStar") Motion to Dismiss (dkt. 16, "Motion") and its supporting

memorandum. (Dkt. 17, "MTD"). GuideStar's Motion should be denied.

## INTRODUCTION

On June 28, 2017, Liberty Counsel filed its Complaint against GuideStar for its tortious

and unlawful adoption and republication of the Southern Poverty Law Center's ("SPLC")

defamatory, false, and misleading representation of Liberty Counsel as a "hate group." (Dkt. 1,

"Compl."). GuideStar's adoption and republication of the SPLC's defamatory, false, and

misleading labeling of Liberty Counsel as a "hate group" is purposefully deceitful and intended to

tarnish Liberty Counsel's reputation, disparage its good name and work, inflict harm and financial

damage, reduce goodwill and standing in the community, expose Liberty Counsel's staff to public

scorn, harassment, intimidation, and potential violence, and to denigrate, malign, and ridicule

Liberty Counsel to countless individuals, donors, and potential donors around the world. (Compl.

¶ 2). GuideStar's defamatory, false, and misleading statement of fact portraying Liberty Counsel

as a "hate group" targets Liberty Counsel for scorn in the community of nonprofit organizations

and is purposefully directed at countless numbers of potential donors with the intent to persuade

them to sever ties with Liberty Counsel, cease providing donations to Liberty Counsel, to persuade

interested donors not to give to Liberty Counsel, to cause companies that provide matching

employee contributions to block contributions to Liberty Counsel, and to assist GuideStar's

political partner, the SPLC, in achieving its mission of "completely destroying" Liberty Counsel.

(*Id.* ¶ 3).

Liberty Counsel brought this action to halt GuideStar's false and defamatory designation of Liberty Counsel as a "hate group," because GuideStar's publication of such false and defamatory statements have resulted in serious injury and harm to Liberty Counsel and its staff. As a result of the false and defamatory "hate group" designation, Liberty Counsel staff have received death threats, and Liberty Counsel has been forced to incur significant expense to enhance and increase its security. (Compl. ¶ 95). Liberty Counsel has been forced to provide additional security because of the significant threat that GuideStar's false and defamatory statement has caused. Violent extremists have relied on the false and defamatory statement to commit acts of terrorism and violence against innocent people who merely happen to hold a different viewpoint on certain issues than GuideStar. (*Id.* ¶¶ 87-94). These threats are serious and will not abate until Liberty Counsel's claims are adjudicated by this Court and GuideStar is permanently enjoined from continuing its dissemination and publication of the false and defamatory categorization of Liberty Counsel as a "hate group."

The threat of violence, however, is not the only injury. As a non-profit charitable entity, Liberty Counsel relies on its good reputation to attract and receive charitable donations from individuals, groups, churches, organizations, foundations, and others. (*Id.* ¶ 26). As with other charitable organizations, these charitable donations are the lifeblood of Liberty Counsel's public support, and Liberty Counsel would not be able to exist or serve its clients, constituents, and the public without such support. (*Id.*). Liberty Counsel's reputation is important to its mission and to its donors or prospective donors, and its long-standing relationships with its donors is made possible by its good name and reputation. (*Id.* ¶¶ 26-27).

As a result of GuideStar's false, misleading, and defamatory statements, Liberty Counsel has suffered actual damage to its reputation and goodwill in the community of nonprofits. (*Id.*

¶ 130). Liberty Counsel has suffered actual damage to its reputation, good name, and standing with its donors and potential donors. (*Id.* ¶ 131). Liberty Counsel has suffered actual damage in its ability to receive donations from donors and potential donors, and this has imposed financial hardship and actual injury on Liberty Counsel. (*Id.* ¶ 134). Donations to Liberty Counsel have and will be negatively affected by GuideStar's false, misleading, and defamatory designation of Liberty Counsel as a "hate group," including donations from individuals, matching corporate employee donations, and donations from foundations, churches, nonprofit organizations, corporate, and educational organizations. (*Id.* ¶ 137). Liberty Counsel's mission of providing pro bono legal representation to many individuals, churches, nonprofit and for profit corporations, and government agencies and political subdivisions has and will continue to be directly harmed and hindered. (*Id.* ¶ 138). These injuries, and the threat of violence and harassment, will continue until Liberty Counsel has its day in court and its claims adjudicated. GuideStar's Motion to dismiss should be denied.

## LEGAL ARGUMENT

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but a plaintiff must meet his "obligation to show the grounds of his entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" and enough facts to "nudge[] [plaintiffs'] claims across the line from conceivable to plausible." *Id.* at 570; *see also Ashcroft*, 556 U.S. at 679 ("a complaint that states a plausible claim to relief survives a motion to dismiss").

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The pleading standard "simply call[s] for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful actions]." *Bell Atl.*, 550 U.S. at 556.

A district court cannot dismiss a complaint under Rule 12(b)(6) "unless **after accepting all well-pleaded allegations in the plaintiff's complaint as true** and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears **certain** that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (emphasis added). GuideStar cannot overcome its extraordinarily high burden to prevail on its motion to dismiss. It is axiomatic that motions to dismiss under Rule 12(b)(6) are **highly disfavored**. *See, e.g.*, *Fayetteville Investors v. Comm. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991) (motion to dismiss are highly disfavored); *Dykes v. Portfolio Recovery Assoc., LLC*, 111 F. Supp. 3d 739, 744 (E.D. Va. 2015) (same). Indeed, such motions "are **rarely granted** by the court and are a disfavored means of resolving litigation." *Beattie v. Skyline Corp.*, 906 F. Supp. 2d 528, 534 (S.D.W.V. 2012).

Dismissal is highly disfavored "even if the face of the pleadings indicate that recovery is very remote." *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). "And, of course, **a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of facts is improbable, and that a recovery is very remote and unlikely**." *Bell Atl.*, 550 U.S. at 556 (emphasis added) (internal quotations omitted). Liberty Counsel's well-pleaded allegations unquestionably cross the minimum threshold, and GuideStar's Motion therefore must be denied.

I.     **LIBERTY COUNSEL HAS SUFFICIENTLY PLEADED A VIOLATION OF THE LANHAM ACT.**

The Lanham Act provides,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in a commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

Liberty Counsel's Complaint states a claim that Guidestar violated this law. Liberty Counsel has sufficiently pleaded that GuideStar's adoption and republication of SPLC's "hate group" designation was commercial in nature and satisfies the requirement of a commercial advertisement or promotion, and that such adoption and republication of SPLC's "hate group" designation is a false and misleading representation of fact. GuideStar's remarkable and unsupported contention to the contrary ignores settled precedent, the plain statutory text, and the well-pleaded allegations of Liberty Counsel's Complaint.

A.     **Liberty Counsel Has Sufficiently Pleaded That GuideStar's Adoption and Republication Of SPLC's "Hate Group" Designation Was Commercial In Nature.**

The threshold requirement for a party asserting a violation of the Lanham Act is that the defendant's "false or misleading representation be a commercial advertisement or promotion." *Handsome Brook Farm, LLC v. Humane Animal Care, Inc.*, 193 F. Supp. 3d 556, 567 (E.D. Va. 2016). To determine whether a plaintiff has satisfied this requirement, this Court, and others throughout the Fourth Circuit, have adopted the four-part test announced in *Gordon & Breach*

*Science Publ'rs v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994). *See Handsome Brook*,

193 F. Supp. 3d at 567.

> Under that standard, commercial advertising or promotion must be (1) commercial speech; (2) by a defendant who is in a commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services and the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* (quoting *Gordon*, 859 F. Supp. at 1535-36). Under this test, Liberty Counsel has sufficiently

pleaded that GuideStar's adoption and republication of the "hate group" designation was made in

a commercial advertising or promotion.

> **1.      Liberty Counsel's Allegations Demonstrate that GuideStar's Adoption and Republication of SPLC's "Hate Group" Designation Was Commercial Speech.**

Liberty Counsel's allegations demonstrate that GuideStar's profile of Liberty Counsel is

commercial speech. Generally, commercial speech is that which "does no more than propose a

commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983).

"Nevertheless, even where speech cannot be characterized merely as proposals to engage in

commercial transactions, the speech may yet be deemed commercial." *Greater Balt. Ctr. for*

*Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 284 (4th Cir.

2013); *see also Handsome Brook*, 193 F. Supp. 3d at 567 ("Mixed messages often fall outside that

'core notion' of commercial speech, but may be commercial speech nonetheless."). Indeed, what

is clear from significant precedent is that commercial advertising or promotion "is broader than

merely the 'classic advertising campaign' . . . and covers misrepresentations by non-profit and for-

profit organizations alike." *Gordon*, 859 F. Supp. at 1535.

In determining whether speech that does not simply propose a commercial transaction is

nevertheless commercial, the Fourth Circuit looks to several factors: "(1) is the speech an

advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Greater Balt.*, 721 F.3d at 285. A fourth factor is also relevant to the determination, "the viewpoint of the listener." *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 331-32 (4th Cir. 2015). But, while the presence of all these factors is strong support for the conclusion that the speech is commercial, "it is not necessary that each of the characteristics 'be present in order for the speech to be commercial.'" *Id.* (quoting *Bolger*, 463 U.S. at 67). Liberty Counsel's well-pleaded allegations establish each of these factors.

> ### a.  GuideStar's adoption and republication of SPLC's "hate group" designation constitutes an advertisement or promotion.

GuideStar claims its profile of Liberty Counsel is not commercial speech because it is not an advertisement and merely seeks to inform consumers of its website. (MTD at 15-16). This argument has been squarely rejected numerous times. The commercial speech determination encompasses much more than the traditional advertising campaign. *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 112 (6th Cir. 1995) ("Speech need not closely resemble a typical advertisement to be commercial."). It includes misrepresentations by organizations doing nothing more than, as GuideStar claims here, distributing information to its consumers. *Gordon*, 859 F. Supp. at 1534. Indeed, "[n]othing in the Lanham Act suggests that 'advertisement' and 'promotion' should be given any interpretation other than their plain and ordinary meaning, **which include the notion of public dissemination of information**." *Am. Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.*, 820 F. Supp. 1072, 1077 (N.D. Ill. 1993) (emphasis added)

> ### b.  GuideStar's adoption and republication of SPLC's "hate group" designation specifically refers to Liberty Counsel's services.

Liberty Counsel's well-pleaded allegations easily satisfy the specific reference requirement. GuideStar's profile of Liberty Counsel specifically refers to Liberty Counsel. That is

the profile's entire purpose. Indeed, GuideStar admits, as it must, that its profile of Liberty Counsel specifically refers to Liberty Counsel's services. (MTD at 16-17). The well-pleaded allegations of Liberty Counsel's Complaint also establish that the specific reference requirement is satisfied. (Compl. ¶¶ 2-4) (alleging that GuideStar's profile of Liberty Counsel specifically refers to Liberty Counsel's services and adopts the SPLC "hate group" designation); (*Id.* ¶ 39) (alleging that GuideStar's profile of Liberty Counsel specifically refers to Liberty Counsel); (*Id.* ¶¶ 97-105) (discussing GuideStar's profile of Liberty Counsel and alleging that it makes certain factual representations concerning Liberty Counsel's services); (*Id.* ¶ 142) ("GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a 'hate group' was made in **reference to Liberty Counsel** as an organization and in terms of **the services it provides**." (emphasis added)). Liberty Counsel's allegations plainly satisfy the specific reference requirement.

### c.   GuideStar has an economic motivation for its adoption and republication of SPLC's "hate group" designation.

Liberty Counsel's allegations also demonstrate that GuideStar has an economic motivation for its adoption of SPLC's "hate group" designation. GuideStar claims that its *raison d'etre* is to be the "search engine for nonprofits." (Compl. ¶ 37). Its chief executive explains that GuideStar views itself as the "hub of information about nonprofit organizations." (*Id.* ¶ 41). The donations GuideStar receives as a nonprofit and the subscription services its provides, both of which are the lifeblood of its organization, "depend on the value . . . consumers will attribute to" the information it provides. *Handsome Brook*, 193 F. Supp. 3d at 568. "Thus both the achievement of [GuideStar's] public interest objective and its economic survival critically depend upon its [donations and subscriptions.]" *Id.* If consumers of GuideStar's information do not trust GuideStar's profiles or information, donations and subscription purchases would dry up. As this Court said in *Handsome*

8

*Brook*, "[t]his creates an organizational **and economic incentive** for [GuideStar] to protect and promote [GuideStar's] brand." *Id.* at 569 (emphasis added).

GuideStar relies on *Radiance Foundation* to assert that it has no economic motivation for its "informative" profiles. (MTD at 15). That reliance is misplaced. In *Radiance Foundation*, the alleged misrepresentation was unconnected to the "transactional components of the website." *Radiance Found.*, 786 F.3d at 326. Other aspects of the website that solicited donations were "displayed on a different page altogether." *Id.* Because of that, the Fourth Circuit held that such attenuated connections could not satisfy the economic motivation factor. Here, however, GuideStar unquestionably proposes economic transactions on Liberty Counsel's profile. Indeed, it explicitly solicits subscription purchases on the profile of Liberty Counsel. (Dkt. 1-2, Compl. Ex. B, at 5-6) ("*Need the ability to download nonprofit data and more advanced search options?* ***Consider a Premium or Pro Search Subscription***." (italics original; bold emphasis added)). In order to view Liberty Counsel's complete profile, including financial documents, consumers of GuideStar's website **must purchase** a Premium or Pro Search Subscription. If such a proposal to engage in an economic transaction does not demonstrate GuideStar's economic motivation for its profiles, that term has no meaning.

Moreover, GuideStar's dismissal arguments also completely ignore that financial motivation can be demonstrated by the economic interest of the speaker and the consumer. *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm.*, 447 U.S. 557, 562 (1980) (commercial speech includes expression related to the economic interests of "the speaker and its audience"); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (commercial speech encompasses economic interests of the speaker's audience); *Huntington Life Sciences, Inc. v. Rokke*, 978 F. Supp. 662, 665 (E.D. Va. 1997) (economic motivations of audience also represents

commercial speech). Liberty Counsel's allegations demonstrate that GuideStar made its decision to include the SPLC "hate group" designation because of the financial interests of its audience. (Compl. ¶ 43) ("GuideStar has admitted that its purpose and motivation for the adoption of the SPLC's designation was financial and economic, because it 'started to hear from customers who were worried they might facilitate a donation to a hate group.'"); (*Id.* ¶ 44) (alleging that GuideStar's decision was specifically related to the economic interests of its audience). GuideStar even admits that its decision was related to the economic interests of its audience. (MTD at 17 n.10) ("the SPLC notation may serve the economic interests of *consumers*" (emphasis original)). GuideStar plainly has an economic incentive and motivation for its profile of Liberty Counsel.

Ultimately, GuideStar's implausible assertion that its designation of Liberty Counsel as a "hate group" is not economically motivated is a question of fact. It is not proper for determination on a motion to dismiss, where Liberty Counsel's well pleaded allegations to the contrary must be accepted as true. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Indeed, GuideStar's reliance on *Radiance Foundation* is inapposite here because the district court's determination on the economic motivation factor was made after a full bench trial on the merits, not at the motion to dismiss stage. *Radiance Found.*, 786 F.3d at 321.

### d. Consumers are likely to perceive GuideStar's adoption and republication of SPLC's "hate group" designation as influencing transactions with Liberty Counsel.

Liberty Counsel's allegations also demonstrate that GuideStar's profile of Liberty Counsel was specifically designed to influence consumers. "[C]ontext matters [and] that context includes the viewpoint of the listener, for 'commercial expression not only serves the economic interests of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information.'" *Greater Balt.*, 721 F.3d at 226 (quoting *Cent. Hudson*, 447 U.S.

at 561-62)). Indeed, the economic interest of the audience is a relevant factor in determining consumer perception. *Huntington*, 978 F. Supp. at 665; *see also Radiance Found.*, 786 F.3d at 331.

Here, the Complaint plainly alleges that GuideStar's audience is likely to perceive GuideStar's profile of Liberty Counsel as influencing consumer transactions. (Compl. ¶ 34) (GuideStar admits that it seeks to influence consumer decisions and charitable giving); (*Id.* ¶ 41) (alleging GuideStar sees itself of the "hub of information" for consumers); (*Id.* ¶ 43) (GuideStar made its decision because of communications with its consumers and customers); (*Id.* ¶ 44) (GuideStar admits that it was seeking to influence its consumers' financial decisions); (*Id.* ¶43) (GuideStar admits that it made its decision based on customers' and subscribers' financial interests); (*Id.* ¶ 145) (GuideStar made its decision to "influence consumers' decisions concerning Liberty Counsel's goods and services"). As this Court held in *Handsome Brook*, there is "little difficulty concluding that speech is commercial" when "[t]he clear purpose" was to induce or affect the economic decisions of its listeners. *Handsome Brook*, 193 F. Supp. 3d at 569.

### 2.   Liberty Counsel's Allegations Demonstrate that GuideStar and Liberty Counsel Are Commercial Competitors.

GuideStar claims that it is not in any commercial competition with Liberty Counsel, and thus its adoption and republication of the SPLC's designation cannot be commercial in nature. (MTD at 17). This assertion, too, falls far short of the mark and ignores substantial precedent. Direct competition is not required under the Lanham Act, and GuideStar and Liberty Counsel's relationship is sufficiently competitive in the nonprofit market.

### a.   Direct competition between Liberty Counsel and GuideStar is not necessary for the organizations to be commercially competitive.

As the Supreme Court has recognized, indirect competition is sufficient for a plaintiff to state a false advertising claim under the Lanham Act. *See Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 134 S. Ct. 1377, 1394 (2014) ("when a party claims reputational injury from disparagement, [direct] competition is not required"). Indeed, numerous courts have determined that the Lanham Act does not require direct competition to state a claim for false advertising. *See, e.g.*, *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015) ("We decline to adopt the requirement that the parties be in competition . . . because the statute nowhere requires such a showing by plaintiffs, we will not impose one."); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) (direct competition is not required under the text of Section 43(a) of the Lanham Act); *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 1191267, *5 n.10 (S.D. Fla. Mar. 16, 2015) ("After the Supreme Court's decision in [*Lexmark*], it does not appear that the second prong of the *Gordon & Breach* test, which requires that the defendant be in commercial competition with the plaintiff, remains good law.").

This Court, too, has held that direct competition is not required to state a false advertising claim under the Lanham Act. *See Handsome Brook*, 193 F. Supp. 3d at 569 ("As a legal matter, a direct-competitor relationship is not necessary to sustain a false advertising claim under the Lanham Act."); *id.* at 570 ("it would be a perplexing decision by the Supreme Court to conclude that indirect competitors had standing to bring a Lanham Act claim, but those same plaintiffs' claims would necessarily fail on the merits due to lack of direct competition"); *id.* ("In the absence of persuasive authority or direct statutory language to the contrary, this Court agrees [that] direct competition . . . is not necessary to state a Lanham Act false advertising claim."). Thus, regardless of whether Liberty Counsel and GuideStar are direct competitors – a claim nevertheless demonstrated by Liberty Counsel's allegations (Compl. ¶¶ 6-7, 26-28, 29, 33, 144) – such a requirement is no longer necessary for Liberty Counsel to state a Lanham Act claim. GuideStar's contention to the contrary (MTD at 17) flouts the weight of the law.

     **b.**    **GuideStar and Liberty Counsel's relationship is sufficiently competitive in the nonprofit market.**

Assuming arguendo that direct competition is still a necessary requirement under the Lanham Act's false advertising provision, Liberty Counsel's allegations nevertheless demonstrate the existence of such competition. As this Court said prior to *Lexmark*'s repudiation of the competition requirement, "no more is required at this stage of the litigation" than alleging that the two organizations operate in the same general market (here, nonprofits) and that they compete for various resources. *Tao of Sys. Integration, Inc. v. Analytical Serv. & Materials, Inc.*, 299 F. Supp. 2d 565, 573 (E.D. Va. 2004). Here, Liberty Counsel has plainly alleged that Liberty Counsel and GuideStar are both nonprofits. (Compl. ¶¶ 6-7). Liberty Counsel has also alleged that both organizations depend on charitable giving to continue in their missions. (*Id.* ¶¶ 26-28) (Liberty Counsel); (*Id.* ¶ 29) (incorporating GuideStar's "About Us" page, which makes it plainly evident that it relies on "program related grants, and contributions"). Liberty Counsel also alleges that, as nonprofits competing for the limited resources of philanthropic giving, their relationship is commercially competitive. (*Id.* ¶ 144). At the motion to dismiss stage, where all allegations are presumed true and all inferences drawn in Liberty Counsel's favor, "no more is required." *Tao*, 299 F. Supp. 2d at 573. As such, Liberty Counsel and GuideStar's relationship is "sufficiently competitive." *Handsome Brook*, 193 F. Supp. 3d at 570.

     **3.**    **Liberty Counsel's Allegations Demonstrate that GuideStar's Adoption and Republication of SPLC's "Hate Group" Designation was Intended to Influence Consumer Decisions Concerning Liberty Counsel's Services.**

Liberty Counsel's allegations also demonstrate that GuideStar's unlawful conduct was intended to influence its consumers' decisions. If the speech was intended to "aid consumers," it is commercial in nature. *Greater Balt.*, 721 F.3d at 286. If consumers of a service or product are

specifically targeted in the representation, it cannot be doubted that the representation was "specifically intended to influence consumers." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996); *see also Handsome Brook*, 193 F. Supp. 3d at 571 (if representation intentionally targeted consumers of the represented service, it is intended "to influence purchasing decisions"). Here, Liberty Counsel has sufficiently pleaded that GuideStar's profile of Liberty Counsel is intended to influence consumer decisions. (Compl. ¶ 34) (noting that GuideStar's claimed mission is to influence consumer decisions and charitable giving); (*Id.* ¶ 36) (alleging that GuideStar claims to provide consumers with the information they desire before making their charitable giving choices); (*Id.* ¶ 44) (GuideStar admitted that it was seeking to "influence the consumers of its information in these decisions they make concerning donations to various nonprofit organizations"); (*Id.* ¶ 143) (GuideStar made the unlawful publication based on concerns about its consumers' economic decisions); (*Id.* ¶ 145) (GuideStar's unlawful publication sought to influence consumer decisions).

GuideStar apparently disputes that its profile of Liberty Counsel seeks to influence its consumers to purchase GuideStar's own services. (MTD at 18). Besides being irrelevant for purposes of this motion to dismiss, GuideStar's factual assertion is demonstrably fallacious. Indeed, GuideStar's profile of Liberty Counsel explicitly seeks to influence its consumers to purchase GuideStar services and subscriptions. GuideStar unquestionably proposes economic transactions on Liberty Counsel's profile. (Dkt. 1-2, Compl. Ex. B, at 5-6) ("*Need the ability to download nonprofit data and more advanced search options?* **Consider a Premium or Pro Search Subscription**." (italics original; bold emphasis added)). Thus, its profile of Liberty Counsel was intended to obtain subscriptions, *i.e.*, the purchase of GuideStar's own products and services. GuideStar's contention to the contrary is incorrect.

14

> **4.    Liberty Counsel's Allegations Demonstrate that GuideStar's Adoption and Republication of SPLC's "Hate Group" Designation Was Sufficiently Disseminated to the Relevant Purchasing Public.**

Notably, GuideStar concedes that Liberty Counsel's allegations satisfy the sufficient dissemination requirement. (MTD at 14 n.9). Thus, this factor is not in dispute. Nor could it be. (*See* Compl. ¶¶ 31, 32, 33, 37, 124, 126).

> **B.    Liberty Counsel Has Sufficiently Pleaded That GuideStar's Adoption And Republication Of SPLC's "Hate Group" Designation Is A False And Misleading Representation Of Fact.**

Having satisfied the threshold requirement of alleging that GuideStar's adoption and publication of SPLC's "hate group" designation was made in a commercial advertisement or promotion, Liberty Counsel need only establish that

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PMB Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002)). **Notably, GuideStar completely ignores this binding test from the Fourth Circuit.** (MTD at 10-12). Rather than addressing the seminal test, GuideStar retreats to a conclusory factual contention that GuideStar's profile of Liberty Counsel is not false or misleading. Such a conclusion, however, cannot be reached without discussing (or for that matter, even acknowledging) the relevant factors for reaching it. GuideStar's *ipse dixit* notwithstanding, Liberty Counsel's allegations plainly and convincingly demonstrate the presence of all factors.

1.     **GuideStar's Adoption and Republication of SPLC's "Hate Group" Designation was a False and Misleading Representation of Fact.**

Liberty Counsel's allegations demonstrate that GuideStar's "hate group" banner on Liberty Counsel's profile is a false and misleading representation of fact. GuideStar attempts to escape its Lanham Act violation by contending that "hate group" has no fixed meaning and cannot, as Liberty Counsel alleges, be limited to groups that involve violence or criminality. (MTD at 11-12). Thus, GuideStar contends, its profile cannot be false or misleading. (*Id.*). This contention falls far short of the mark.

As numerous courts have noted, "hate groups" have historically been understood as those that commit violent crimes and seek to intimidate people with violence and crime. *See, e.g.*, *Virginia v. Black*, 538 U.S. 343, 352-357 (2003) (noting that hate groups, such as the KKK, have a "history of violence associated" with them and that "[v]iolence was also an elemental part" of a hate group); *Capital Square Rev. & Advisory Bd v. Pinette*, 515 U.S. 753, 770-71 (1995) (Thomas, J., concurring) (noting that hate groups, such as the KKK, employ "tool[s] for the intimidation and harassment of ... groups hated by the Klan"); *Young v. City of Louisville*, 7 F.3d 237 (6th Cir. 1993) (noting that "hate groups commit violent crimes"); *Powers v. Clarke*, No. 3:11CV763-HEH, 2014 WL 6982475, *3 n.10 (E.D. Va. Dec. 9, 2014) (quoting Virginia Department of Corrections Operating Procedure § 803.2.iii's definition of gangs and hate groups as those that "pose a threat to the safety and security of staff" and "engage in unauthorized/illegal activities"); *Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 641 (W.D. Tex. 2013) (noting that hate groups, such as the KKK, have "a history of violence"); *Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724 (W.D. Va. 2012) (noting that hate groups, such as the KKK, have "a history of brutal violence and instilling fear in its victims through harassment and intimidation" and that such groups are known for their violence); *Kenyatta v. Moore*, 623 F. Supp. 220, 221 n.2 (S.D. Miss. 1985) (noting that

the Federal Bureau of Investigations targets "hate-type organizations and groupings" because of "their propensity for violence and civil disorder"). GuideStar's contention to the contrary collapses under the weight of this historical precedent.

GuideStar's sole refuge for its argument is the contention that the definition of "hate" does not require violence or criminality (MTD at 11-12). But, this contention ignores the fact that when coupled with other terms, "hate" certainly is intended to convey violence or criminality. *See Black's Law Dictionary* 1529 (9th ed. 2009) (defining "hate speech" as speech expressed "in circumstances in which the communication is likely to provoke violence"). If "hate speech" is defined by its relation to violence, then certainly "hate group" necessarily carries the same connotation with etymological soundness. GuideStar's representation of Liberty Counsel as a "hate group" is thus false and misleading. *See infra* Section I.B.3 (discussing the misleading and deceptive nature of GuideStar's use of the SPLC's "hate group" designation).

In any event, GuideStar's factual assertion that "hate group" does not mean in the mind of the public what Liberty Counsel asserts that it means, is not relevant or proper on this motion to dismiss, where Liberty Counsel's, not GuideStar's, allegations must be accepted as true.

## 2. GuideStar's False and Misleading Representation of Fact was Commercial in Nature.

As demonstrated above, GuideStar's false and misleading representation of fact was commercial in nature. In constitutes commercial speech, *supra* Section I.A.1, was based on GuideStar's economic motivations, *supra* Section I.A.1.c, and was intended to influence consumers' commercial transactions, *supra* Section I.A.3. Moreover, as the Fourth Circuit has noted, the commercial nature of a false or misleading representation of fact is "coterminous with that commerce that Congress may regulate under the Commerce Clause." *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir.

2003). Liberty Counsel's allegations demonstrate the commercial nature of GuideStar's representation. *See infra* Section I.B.5 (discussing the interstate commerce requirement).

### 3.   GuideStar's False and Misleading Representation of Fact was Material and Likely to Influence Consumer Decisions.

"The materiality component of a false advertising claim requires a plaintiff to prove that the defendant's deception is 'likely to influence the purchasing decision.'" *Cashmere & Camel Hair Mfrs. Inst. v. Sakes Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002) (quoting *Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 33 n.6 (1st Cir. 2000)); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (same); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008). This Court, too, has noted that a plaintiff satisfies the materiality prong if it can allege that the false and misleading statements "are likely to influence to purchasing decision of consumers." *Handsome Brook*, 193 F. Supp. 3d at 573.

Here, Liberty Counsel's allegations establish that GuideStar's false and misleading representation of fact was material and likely to influence consumer decisions. (Compl. ¶ 3) (GuideStar's false and misleading designation intended to influence consumer decisions concerning Liberty Counsel's services); (*Id.* ¶¶ 32-33) (noting that GuideStar is used by institutional and individual donors to make purchasing decisions concerning nonprofits); (*Id.* ¶ 34) (noting that GuideStar's mission is to "enable[] users to make better decisions" and "encourage charitable giving"); (*Id.* ¶ 43) (noting that GuideStar adopted its false and misleading representation concerning Liberty Counsel because its consumers had communicated with it concerning purchasing decisions); (*Id.* ¶ 145) (GuideStar's false and misleading representation of fact was "made for the purpose of influencing consumer decisions concerning Liberty Counsel's goods and services"). As these allegations demonstrate, not only is GuideStar's false and

misleading representation of fact likely to influence consumers, but it was GuideStar's intention for it to do so.

Moreover, "[o]ne method of demonstrating materiality involves showing that the false or misleading statement relates to an inherent quality or characteristic of the product." *Cashmere*, 284 F.3d at 311-12; *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). Liberty Counsel's allegations also demonstrate that GuideStar's false and misleading representation of fact went to the inherent quality of Liberty Counsel's services. Indeed, GuideStar's entire mission allegedly is to provide "as much information as it can on each nonprofit's mission, **legitimacy**, impact, **reputation**, finances, programs, transparency, governance, and so much more." (Compl. ¶ 35) (emphasis added). If GuideStar's stated mission is to provide all information it can on nonprofits, then making factual representations concerning each organization necessarily goes to the "inherent quality" of the products or services Liberty Counsel provides. GuideStar's false and misleading representation was, thus, material.

### 4. GuideStar's False and Misleading Representation of Fact Actually Deceives and Has the Tendency to Deceive Consumers.

The purpose of the Lanham Act is to prevent misrepresentations that "deceive consumers" in a manner that is of "consequence to purchasers" and consumers. *Dastar Corp. v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23, 32-33 (2003). Indeed, the *sine qua non* of the Lanham Act is "the avoidance of a **likelihood of confusion** in the minds of the buying public." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 304 (3d Cir. 1986) (emphasis added). Liberty Counsel can satisfy this factor by showing that "the contested statement or representation [was] either false on its face or, although literally true, likely to mislead and to confuse consumers." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993); *PMB Prod.*, 639 F.2d at 120. If a representation is literally false, no evidence of confusion is necessary. *Scotts Co.*, 315 F.3d at 274. But, if a statement

is impliedly false, Liberty Counsel must allege that it is likely to mislead and confuse consumers. *PMB Prod.*, 639 F.3d at 120. Liberty Counsel's allegations demonstrate that GuideStar's representation was literally false, actually deceives, and has the tendency to deceive.

### a.    GuideStar's representation is literally false.

Where, as here, "[t]he complaint repeatedly alleges, *inter alia*, that a defendant 'falsely represented'" the plaintiff's products or services and that its representation was based upon "seriously unreliable" information, the plaintiff has satisfied this factor. *Mylan*, 7 F.3d at 1138. Here, Liberty Counsel has alleged repeatedly that GuideStar adopted and republished the SPLC's "hate group" designation as an assertion of fact. (Compl. ¶¶ 55, 97-105). Liberty Counsel has also alleged that such a designation was literally false and misleading. (*Id.* ¶ 24) (noting that Liberty Counsel is not a hate group); (*Id.* ¶¶ 58-60) (noting that GuideStar's representation of Liberty Counsel is not based on the traditional understanding of "hate groups" and lumps Liberty Counsel together with historically violent and criminal "hate groups"); (*Id.* ¶ 148-149) (alleging that GuideStar's representation is false and misleading). Based on allegations such as these, the Fourth Circuit in *Mylan* held that the plaintiff "has set forth in the complaint sufficiently particularized allegations of false or misleading representations to sustain" a Lanham Act claim against a motion to dismiss. *Mylan*, 7 F.3d at 1138. "Put in other terms, we cannot say, when fairly reading [such allegations in] in the pleadings, that Mylan has failed to state a set of facts which, if proven, would entitle it to relief." *Id.* Liberty Counsel has similarly alleged actual falsity, and those allegations must be accepted as true at this stage.

### b.    GuideStar's representation has a tendency to deceive.

Even if GuideStar's representation is not literally false, which it is, "it may nonetheless be 'false by implication because it would likely mislead consumers of the product the statement

concerns.'" *Handsome Brook*, 193 F. Supp. 3d at 572 (quoting *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)). Indeed, "it is now settled that [the Lanham Act] creates a new statutory tort of broader scope, which requires neither proof of literal or obvious falsehood." *Proctor & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 113, 119 (2d Cir. 1984). Section 43(a) of the Lanham Act "encompasses more than blatant falsehoods. It embraces innuendo, indirect imitations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts." *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981) (internal quotations omitted); *see also Mylan*, 7 F.3d at 1138 (Lanham Act includes more than "blatant falsehoods").

At this stage, Liberty Counsel has sufficiently alleged a tendency to deceive. (Compl. ¶ 48) (noting that GuideStar admits that there are "legitimate critiques" to the "hate group" designation and that it is the result "political bias"); (*Id.* ¶ 57) (alleging that GuideStar's representation is based on a reckless characterization); (*Id.* ¶ 58) (noting that GuideStar's source for its representation attaches the "hate group" label without requiring the historically significant prerequisite of violence and criminality); (*Id.* ¶ 75) (noting that GuideStar's representation is ultimately based on nothing but "loosey-goosey criteria"); (*Id.* ¶ 77) (noting that GuideStar's source for its representation is "not an objective purveyor of data"); (*Id.* ¶ 81) (noting that GuideStar made its representation about Liberty Counsel despite its "utter lack of any reasonable criteria"); (*Id.* ¶ 150) (alleging that GuideStar's representation is "likely to cause confusion, to cause mistake, and to deceive"). As Liberty Counsel's Complaint makes plain, GuideStar's representation is based on "innuendo" (Compl. ¶ 88), and under *Mylan* and *Vidal Sassoon*, such innuendos are actionable under the Lanham Act.

5. **GuideStar's False and Misleading Representation of Fact was Placed in Interstate Commerce.**

That GuideStar's representation of Liberty Counsel as a "hate group" was placed in interstate commerce cannot be disputed. GuideStar placed its representation on its commercially available website. (Compl. ¶¶ 123, 126). "Such use of the internet to communicate a statement is certainly interstate commerce within the meaning of the Lanham Act." *Handsome Brook*, 193 F. Supp. 3d at 574; *see also AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 512 (W.D. Va. 2013) ("the internet is an instrumentality of interstate commerce" and statements made on a company's website satisfy the "in commerce requirement"); *Boykin Anchor Co., Inc. v. AT&T Corp.*, 825 F. Supp. 2d 706, 710 (E.D.N.C. 2011) (same).

6. **Liberty Counsel Has Suffered and is Likely to Suffer Injury as a Result of GuideStar's False and Misleading Representation of Fact.**

Liberty Counsel's "alleged injuries—lost [contributions] and damage to its business reputation—are precisely the sorts of commercial interests the [Lanham] Act protects." *Lexmark*, 134 S. Ct. at 1393. Indeed, where, as here, "a defendant harms a plaintiff's reputation by casting aspersions on its business," plaintiffs can state a claim under the Lanham Act. *Id.*; *see also id.* (plaintiff states a Lanham Act claim "where the defendant damages the product's reputation"); *Dastar Corp.*, 593 U.S. at 32 (reputational injury, or misrepresentations that "impair the producer's goodwill" in the community are what the Lanham Act was intended to protect); *Qualitex Co. v. Jacobsen Prod. Co., Inc.*, 514 U.S. 159, 164 (1995) (Lanham Act was intended to ensure that organization "will reap the financial, reputation-related rewards associated with a desirable product").

Liberty Counsel has sufficiently pleaded damage to its reputation and the likelihood of lost revenue from GuideStar's false and misleading representation of fact. (Compl. ¶¶ 130-132)

(alleging that "Liberty Counsel has suffered, is suffering, and will continue to suffer actual damage to its reputation, good name and standing" in the nonprofit community, with its donors, and with its potential donors); (*Id.* ¶ 133) (alleging that "Liberty Counsel is likely to suffer actual damage to its reputation, good name, and standing with potential donors in the future"); (*Id.* ¶ 134) (alleging that "Liberty Counsel has suffered actual damage in its ability to receive donations from donors and potential donors"); (*Id.* ¶ 136) (alleging that Liberty Counsel is likely to suffer damage from donors refusing to continue contributing to Liberty Counsel); (*Id.* ¶ 137) (alleging that donations to Liberty Counsel have been affected and will continue to be affected by GuideStar's false and misleading representation); (*Id.* ¶ 138) (same). Liberty Counsel has thus sufficiently pleaded injury and actual damage as a result of GuideStar's false and misleading representation of Liberty Counsel as a "hate group." Liberty Counsel has therefore satisfied all requirements of pleading a Lanham Act claim, and GuideStar's Motion must be denied.

## II.   LIBERTY COUNSEL HAS SUFFICIENTLY PLEADED A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY.

Liberty Counsel has also sufficiently pleaded a claim for tortious interference with a business expectancy. To state such a claim, Liberty Counsel's allegations must

> (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference.

*Commercial Funding Corp. v. Worldwide Sec. Serv. Corp.*, 249 F.3d 204, 214 (4th Cir. 2001). In addition, for prospective economic expectancy claims, such as Liberty Counsel's here, "a plaintiff must also demonstrate that the defendant employed improper methods." *Id.* Liberty Counsel's allegations satisfy these requirements.

**A.     Liberty Counsel Has Sufficiently Pleaded The Existence Of A Business Expectancy.**

"To prove the existence of a business expectancy, a party must demonstrate an objective expectation of future business." *Southprint, Inc. v. H3, Inc.*, 208 F. App'x 249, 253 (4th Cir. 2006). To make such a demonstration, it is sufficient to plead the "probability of future economic benefit." *Commercial Bus. Sys., Inc. v. Hallifax Corp.*, 484 S.E.2d 892, 897 (Va. 1997). However, "under Virginia law, the existence of a contract is not a prerequisite to a claim of tortious interference. The interference may be to a contract expectancy, meaning a contract [or financial expectancy] that was **expected to come into force in the future**." *T.G. Slater & Son., Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004) (emphasis added) (citing *Maximus, Inc. v. Lockheed Mgmt. Info Sys. Co.*, 493 S.E.2d 375, 378 (Va. 1997)).

Liberty Counsel has alleged such an expectancy. (Compl. ¶26) (alleging that Liberty Counsel has current donors and prospective donors from whom it has the probability of future economic benefit); (*Id.* ¶ 27) (same); (*Id.* ¶ 28) (alleging that Liberty Counsel has "long-standing relationships with its donors" from whom it has the high probability and factually grounded expectation of future economic benefit); (*Id.* ¶ 159-60) (alleging that Liberty Counsel has existing business relationships and expectancies from its "current and consistent contributors and donors"). These long-standing relationships are sufficient to demonstrate that Liberty Counsel has an objective expectation of continued support and, thus, the probability of future economic benefit.

GuideStar attempts to impose an additional element of pleading that such an expectancy be specific and name a particular party from whom the expectancy is anticipated. (MTD at 19-20) (citing cases). However, the Supreme Court of Virginia has never discussed or imposed such a requirement. Not one of GuideStar's cited cases derives this requirement from a decision by the Supreme Court of Virginia, nor could they. As such, the additional requirement GuideStar seeks

to impose has no basis in the law of the Commonwealth. Indeed, "[a] federal district court, sitting in [diversity], **must** apply the law **as announced** by the highest court of that state." *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974) (emphasis added). The same is true of a district court exercising pendent jurisdiction over state law claims. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 n.7 (4th Cir. 1992). It is now black letter law that a district court has no authority to impose additional requirements wholly foreign to the law **as announced** by the Supreme Court of Virginia. *Id.* at 1416 (holding that *Erie* mandates that "litigation of state-based rights in federal court does not yield results materially different from those attained in state courts."). Thus, the precedent relied upon by GuideStar is in error and, in any event, is not entitled to any precedential weight. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").[1]

**B.     Liberty Counsel Has Sufficiently Pleaded that GuideStar Had Knowledge of Liberty Counsel's Business Expectancy.**

Liberty Counsel must also plead that GuideStar had knowledge of Liberty Counsel's business expectancy. *Chaves v. Johnson*, 335 S.E.2d 97, 103 (Va. 1985) (knowledge is a requisite element). Liberty Counsel's allegations satisfy this requirement as well. (Compl. ¶ 3) (alleging that GuideStar targeted Liberty Counsel's donors and contributors, which necessarily requires that

---

[1] That the Supreme Court of Virginia has not imposed such a requirement, particularly in the nonprofit context, is unsurprising. Mandating that a nonprofit, such as Liberty Counsel, disclose particular and specific donors from whom it has an expectancy would raise significant constitutional implications and violate the First Amendment. *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Such a requirement would force nonprofits to forfeit a constitutional right in order to pursue their claims, and therefore violate the unconstitutional conditions doctrine. *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013); *Stephens v. Cnty. of Albermarle*, Civ. A.3:04CV00081, 2005 WL 3533428, * 6 (W.D. Va. Dec. 22, 2005) (noting that the unconstitutional conditions doctrine also applies to forfeiture of rights in litigation).

GuideStar had knowledge of donors to target); (*Id.* ¶ 35) (alleging that GuideStar maintains financial information on its profiled nonprofits, including Liberty Counsel); (*Id.* ¶ 163) ("As a nonprofit organization and the purported leader in nonprofit information, GuideStar is unquestionably aware of the specific and existing business relationships and expectancy that Liberty Counsel has from its donors and potential donors."); (*Id.* ¶ 164) (alleging that GuideStar has actual knowledge of Liberty Counsel's business expectancy due to its review and dissemination of IRS documents concerning Liberty Counsel's finances). At the motion to dismiss stage, Liberty Counsel has plainly alleged sufficient knowledge on the part of GuideStar.

### C.    Liberty Counsel Has Sufficiently Pleaded GuideStar's Intentional Interference With Liberty Counsel's Business Expectancy.

To plead intentional interference, Liberty Counsel need only allege sufficient facts to show that GuideStar "act[ed] with the purpose of, or **a partial desire** to, interfere with the performance of another's [expectancy]." *Commercial Funding*, 249 F.3d at 212 (emphasis added). Liberty Counsel can also satisfy this element by alleging that the "requisite level of intent exists [because] the interferor 'knows that the interference is certain or substantially certain to occur as a result of his actions.'" *Id.* at 212-13 (quoting Restatement (Second) of Torts § 766 cmt. j). "Tortious interference means only that the interference was intentional and improper under the circumstances." *Maximus*, 493 S.E.2d at 379.

Liberty Counsel has plainly alleged such intent, or at minimum, a partial desire. (*See* Compl. ¶ 3) (alleging that GuideStar targeted Liberty Counsel and purposefully directed its false and misleading representation at Liberty Counsel donors); (*Id.* ¶¶ 48-50) (GuideStar admitted that it was making the representation because of its belief that hateful rhetoric is on the rise, despite admitting that there are legitimate criticisms of its false and misleading representation); (*Id.* ¶ 106) (same); (*Id.* ¶ 107) (GuideStar's chief executive noted that its decision was entirely politicized);

(*Id.* ¶¶ 109-111) (alleging that GuideStar adopted the SPLC representation despite knowing that it was politically biased, but that GuideStar shared that ideology and targeted Liberty Counsel); (*Id.* ¶¶ 113-119) (noting that GuideStar's decision was based on opposition to Liberty Counsel's views on certain matters and that GuideStar targeted Liberty Counsel because of that opposition); (*Id.* ¶ 120) (GuideStar specifically targeted Liberty Counsel to diminish its views and positions); (*Id.* ¶ 122) (alleging that GuideStar's decision was based entirely on its shared goal with the SPLC to destroy Liberty Counsel). The allegations make abundantly clear that GuideStar intentionally targeted Liberty Counsel and that it did so with the intent to interfere with Liberty Counsel's ability to continue to receive contributions and donations. Indeed, if the allegation that GuideStar shares the SPLC's objective to completely destroy Liberty Counsel, and specifically targeted Liberty Counsel out of that desire, is insufficient to satisfy the intentional interference element, nothing could ever meet that standard.

### D.    Liberty Counsel Has Sufficiently Pleaded Improper Methods.

In a prospective economic advantage claim, plaintiff must demonstrate that defendant employed improper methods. *Maximus*, 360 S.E.2d 378-39. "Among the most egregious examples of improper conduct are those 'that are illegal or independently tortious, **such as violations of statutes**, regulations, or recognized common law rules." *Commercial Funding*, 249 F.3d at 214 (quoting *Duggin*, 360 S.E.2d at 836) (emphasis added). "Other egregious forms of interference include . . . **misrepresentations** or deceit [and] **defamation**." *Id.* (emphasis added). Liberty Counsel's allegations plainly demonstrate that GuideStar's false and misleading representation was a violation of a statute, and thus an egregiously improper method. (Compl. ¶¶ 139-157) (alleging GuideStar violated the Lanham Act). GuideStar claims that Liberty Counsel cannot satisfy this element because its Lanham Act claim fails as a matter of law. (MTD at 21). But, as

27

demonstrated above, GuideStar's defenses completely ignore long-standing and binding precedent on the Lanham Act, and Liberty Counsel's Lanham Act claim states a convincing claim. *See supra* Section I. Moreover, Liberty Counsel has alleged that GuideStar's false and misleading representation was defamatory, yet another egregiously improper method. (Compl. ¶¶ 171-184). Thus, at the motion to dismiss stage, Liberty Counsel has sufficiently alleged that GuideStar employed improper methods.

### E.   Liberty Counsel Has Sufficiently Pleaded Injury.

GuideStar does not challenge, and therefore concedes, that Liberty Counsel has sufficiently pleaded damage and injury. (MTD at 18-21). Nor could GuideStar challenge the sufficiency of such allegations. (*See, e.g.*, Compl. ¶¶ 130-138, 167-170). Liberty Counsel has suffered damage to its goodwill, reputation, and standing in the nonprofit community, with its donors and potential donors, and has suffered actual damage to its ability to receive contributions. (*Id.*).

## III.   LIBERTY COUNSEL HAS SUFFICIENTLY PLEADED A CLAIM FOR DEFAMATION.

To state a claim for defamation under Virginia law, three elements are required: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Chapin v. Knight-Rider, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Liberty Counsel easily satisfies this threshold.

### A.   Liberty Counsel Has Sufficiently Pleaded Publication.

GuideStar does not challenge, and therefore concedes, that Liberty Counsel has sufficiently pleaded publication. (MTD at 21-26).

### B.   Liberty Counsel Has Sufficiently Pleaded That GuideStar's Adoption And Republication Of SPLC's "Hate Group" Designation Is A False And Actionable Statement Of Fact Harmful To Liberty Counsel's Reputation.

"To be actionable, the statement must be not only false, but also defamatory, that is, it must '**tend to harm the reputation of another** as to lower him in the estimation of the community or

to deter third persons from associating or dealing with him'" *Chapin*, 993 F.2d at 1092 (quoting Restatement (Second) of Torts § 559) (emphasis added). Such statements are actionable because an "individual's right to personal security includes his uninterrupted entitlement to enjoyment of his reputation." *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 720 (Va. 1985). Indeed, claims for injury to reputation are permitted because "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966). Liberty Counsel has sufficiently alleged that GuideStar's defamatory statement in a false statement of actionable fact, not opinion.

### 1. Liberty Counsel has Sufficiently Alleged that GuideStar's Defamatory "Data" was a Statement of Fact, and GuideStar Cannot Now Couch it as Mere Opinion.

GuideStar claims that its defamatory characterization of Liberty Counsel as a "hate group" cannot be understood by any reasonable person to be a statement of fact. (MTD at 23).[2] This contradicts GuideStar's entire reason for its existence, GuideStar's numerous statements concerning its designations, the well-pleaded allegations of Liberty Counsel's Complaint, and common sense.

First, as Liberty Counsel's allegations demonstrate, GuideStar's entire purpose in adopting and republishing the "hate group" designation was to offer factual information. (Compl. ¶ 35) (GuideStar claims its mission is to provide as much factual information as it can); (*Id.* ¶ 36) (same); (*Id.* ¶ 38) (GuideStar offered the "hate group" designation as a representation of fact); (*Id.* ¶ 42) (GuideStar admits that it wanted to offer this "hate group" data); (*Id.* ¶ 45) (same); (*Id.* ¶ 46)

---

[2] GuideStar speaks out of both sides of its mouth for purposes of its Motion. In one breath, it claims that its "hate group" designation is not actionable because it is a statement of opinion, not fact. (MTD at 22). But, in the other, it admits that it"makes a single representation of fact." (MTD at 10). Both cannot be true, and its defamatory characterization of Liberty Counsel was a statement of fact, not opinion.

(same); (*Id.* ¶ 49) (same); (*Id.* ¶ 53) (same); (*Id.* ¶ 54) ("GuideStar's admitted desire to include relevant 'data' (*i.e.*, facts) from the SPLC's 'factual' determinations concerning certain nonprofit organizations demonstrates that GuideStar … wanted to offer additional facts."); (*Id.* ¶ 55) (same). As these allegations demonstrate, GuideStar was making a factual representation.

The plain meaning of GuideStar's own chosen term, "data," evinces that it was purporting to offer facts, not opinions. Indeed, "data" is defined as "**factual information** used as a basis for reasoning, discussion, or calculation." *Data Definition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/data (last visited August 2, 2017) (emphasis added); *see also Veridyen Corp. v. United States*, 758 F.3d 1371, 1374 (Fed. Cir. 2014) (defining data as "all the facts"); *Timeline, Inc. v. Proclarity Corp.*, No. C05-1013JLR, 2006 WL 6143242, *6 (W.D. Wash. Jun 29, 2006) ("data are raw **facts**" (emphasis added)); *id.* (noting that the dictionary defines "data" and "fact" the same way). GuideStar's admitted desire to offer the SPLC's "hate group" designation as "data," and its characterization of that designation as such, necessarily dictates that it was offering statements of fact.

GuideStar cannot escape liability from its defamatory statement by claiming it was mere opinion. Indeed, there is no "wholesale defamation exemption for anything that might be labeled 'opinion'" because that "would ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Jounral Co.*, 497 U.S. 1, 18 (1990). A purported statement of "opinion may constitute actionable defamation . . . if the opinion can be reasonably interpreted to declare **or imply** untrue facts." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 183 (4th Cir. 1998) (emphasis added). Indeed, defamation law would be utterly worthless if defendants could escape their defamatory statement by merely couching it in terms of opinion.

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker

states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. **Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."** As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'"

*Milkovich*, 497 U.S. at 18-19 (quoting *Cianci v. New Time Publ'g Co.*, 639 F.2d 54, 64 (2d Cir. 1980) (emphasis added)); *see also Schnare v. Ziessow*, 104 F. App'x 847, 850-51 (4th Cir. 2004) (same).

Here, as shown above, GuideStar purported to offer "data," meaning facts, not opinion. Yet, even if GuideStar had attempted to couch its "hate group" designation as opinion, as its lawyers belatedly attempt to do for litigation purposes now, even opinion statements are actionable when they declare or imply untrue facts, as Liberty Counsel alleges that GuideStar has done here.

In sum, GuideStar's claim that no "fair-minded reader" would think it was offering factual information is utterly devoid of merit, runs contrary to its own public statements and mission, and is eviscerated by the well-pleaded allegations of Liberty Counsel's Complaint.

## 2. Liberty Counsel has Sufficiently Alleged that GuideStar's Defamatory Statement was False.

GuideStar's attempts to dismiss Liberty Counsel's defamation claim by making the bald **factual** assertion that its designation of Liberty Counsel as a "hate group" is true, and thus not actionable. (MTD at 24). This argument falls far short of the mark, and is borderline frivolous. At this stage, Liberty Counsel's allegations of the falsity of the statement are taken as true, regardless of GuideStar's factual disagreement. "On a motion to dismiss a libel suit because of no actionable statement, **the court must of course credit the plaintiff's allegation of the factual falsity of a statement**." *Chapin*, 993 F.2d at 1092 (emphasis added); *Dangerfield v. WAVY Broad., LLC*, 228

F. Supp. 3d 696, 702 (E.D. Va. 2017) (same); *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 609 (E.D. Va. 2005) (same).

Here, Liberty Counsel has plainly alleged that GuideStar's factual statement is false. (Compl. ¶ 1) (GuideStar's adoption and republication of SPLC's designation of Liberty Counsel as a "hate group" is false); (*Id.* ¶ 2) (same); (*Id.* ¶ 3) (same); (*Id.* ¶ 4) (same); (*Id.* ¶ 174) (same); (*Id.* ¶ 175) (same). (*See also Id.* ¶ 48) (noting the numerous criticisms of the designation); (*Id.*) (noting that the designation is politically biased); (*Id.* ¶ 51) (noting the GuideStar did not conduct any investigation into the veracity of the claim); (*Id.* ¶ 58) (noting that the designation is not based on the historical understanding of hate groups as violent or criminal); (*Id.* ¶ 61) (noting that the entire point of the designation is not to state truth, but to destroy the groups so labeled); (*Id.* ¶ 65) (quoting experts in the field of extremists groups who states that the "hate group" designation is false); (*Id.* ¶ 72) (noting that the "hate group" label is not based on fact, but is instead a reckless and ideological position); (*Id.* ¶ 75) (noting that the criteria by which groups are designated as "hate groups" is "loosey-goosey" and not based in fact); (*Id.* ¶ 77) (noting that the "hate group" designation is not based on objective fact); (*Id.* ¶ 81) (noting that the "hate group" label is based on no reasonable factual criteria).

As these allegations demonstrate, Liberty Counsel's well-pleaded Complaint sufficiently alleges the falsity of GuideStar's defamatory statement, and therefore withstands GuideStar's Motion.

> **C.    Liberty Counsel Has Sufficiently Pleaded that GuideStar Adopted And Republished SPLC's "Hate Group" Designation With Knowledge Of Its Falsity or With Reckless Disregard For Its Truthfulness.**

GuideStar is correct in claiming that Liberty Counsel is a public figure for purposes of defamation law. (MTD at 24). Because of that, Liberty Counsel must plead that GuideStar acted

with actual malice when it adopted and republished the "hate group" designation. *N.Y. Times Co. v. Sullivan*, 376 U.S. 256, 279-80 (1964). Contrary to GuideStar's contentions (MTD at 24-25), however, Liberty Counsel's allegations plainly establish that GuideStar acted with actual malice.

To demonstrate actual malice, a plaintiff need only demonstrate that the defendant acted "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280; *CACI Premier Tech., Inc. v. Rhodes*, 536 U.S. 280, 300 (4th Cir. 2008) (same). There are several avenues to demonstrate such malice. First, in the "public figure who is not a public official" context, such as Liberty Counsel here, the actual malice standard can be demonstrated "on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publ'g Co. v. Butts*, 308 U.S. 130, 155 (1966). Indeed, while generally a "failure to investigate will not alone support of finding of actual malice . . . **the purposeful avoidance of the truth is in a different category**." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (emphasis added).

Here, Liberty Counsel's well-pleaded allegations demonstrate that GuideStar adopted and republished the false and defamatory "hate group" label without conducting **any** investigation and with the purposeful avoidance of truth. (Compl. ¶ 51) (GuideStar admitted that it "did not conduct its own investigation of whether a nonprofit deserves to be labeled a hate group"); (*Id.*, Ex. B) (same) (quoting GuideStar's Chief Executive Officer Jacob Herold); (*Id.* ¶ 121) (alleging GuideStar adopted and republished the "hate group" designation with reckless disregard for its truth). GuideStar's failure to investigate, despite admittedly knowing of the legitimate and widespread criticisms of its designation (*id.* ¶¶ 48-50, 51, 80-81, 106-107, 109), was therefore the

purposeful avoidance of truth. Liberty Counsel's allegations satisfy the actual malice standard under the *Butts* and *Harte-Hanks* formulations.

Additionally, Liberty Counsel can demonstrate actual malice by showing that GuideStar's adoption and republication of the defamatory statement was made despite GuideStar being "aware of the likelihood that [it] was circulating false information" and maintaining a "high degree of awareness of probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Id.* at 732 ("recklessness may be found **where there are obvious reasons to doubt the veracity of the [information]**" (emphasis added)); *Ryan v. Brooks*, 634 F.2d 726, 733-34 (4th Cir. 1980) (actual malice standard satisfied if "defendant's conduct was so reckless in publishing material of obviously doubtful veracity that it approaches the level of publishing a knowing, calculated falsehood"); *New Life Ctr., Inc. v. Fessio*, 229 F.3d 1143 (4th Cir. 2000) (same); *Appleyard v. Transamerican Press, Inc.*, 539 F.2d 1026 (4th Cir. 1976) (holding that the expression of doubts about the veracity of the statement is sufficient to satisfy the actual malice standard); *CACI*, 536 F.3 at 300 (same).

Here, Liberty Counsel's allegations also demonstrate GuideStar maintained serious doubts about the veracity of its claim, was aware of the widespread criticisms and doubts about the truthfulness of the statement it was adopting and republishing, and nevertheless published the false and defamatory designation despite its knowledge and doubts. (Compl. ¶ 46) (GuideStar admitted that there are "legitimate critiques" of the false and defamatory designations and that they were the result of "political bias"); (*Id.* ¶ 49) (GuideStar knew the data beneath its false and defamatory statement was "flawed"); (*Id.* ¶ 51) (GuideStar knew the data beneath its false and defamatory statement was "highly politicized" but admittedly failed to conduct any investigation into the designation); (*Id.* ¶ 65) (noting that experts have condemned SPLC's "hate group" designation and

false and misleading); (*Id.* ¶¶ 66-71) (same); (*Id.* ¶ 75) (noting that there are "serious objections" to the data upon which GuideStar based its false and defamatory statement); (*Id.* ¶ 77) (noting that the data upon which GuideStar based its false and defamatory statement does not come from "an objective purveyor of data"); (*Id.* ¶¶ 79-83) (noting that the data upon which GuideStar based its false and defamatory statement does not come from "a consumer reports guide" and is based on "an utter lack of any reasonable criteria"); (*Id.* ¶ 178) (GuideStar published the false and defamatory statement with actual knowledge of its falsity); (*Id.* ¶ 179) (GuideStar published the false and defamatory statement with reckless disregard for the truth of its representation); (*Id.* ¶ 180) (GuideStar published the false and defamatory statement with a high degree of awareness concerning its falsity).

Under these allegations, there can be no dispute that Liberty Counsel has sufficiently pleaded that GuideStar published the false and defamatory "hate group" designation with "a high degree of awareness as to its probable falsity, *St. Amant*, 390 U.S. at 731, and with serious doubts about its accuracy and truth. *Ryan*, 634 F.2d at 733-734. Indeed, GuideStar admitted that it was publishing the false and defamatory statements despite the criticisms and widespread condemnation of its statement. Such conduct is unquestionably reckless and "approaches the level of publishing a knowing, calculated falsehood." *New Life*, 229 F.3d at 1143. Liberty Counsel's well-pleaded allegations satisfy the actual malice standard of *N.Y. Times*. GuideStar's Motion should be denied.

## CONCLUSION

For the foregoing reasons, GuideStar's Motion must be denied.

Dated: August 7, 2017                    Respectfully submitted,

                                         /s/ Daniel J. Schmid
                                         Mathew D. Staver*
                                         Horatio G. Mihet*
                                         Roger K. Gannam*
                                         Daniel J. Schmid (VA Bar No. 84415)
                                         Mary E. McAlister (VA Bar No. 76057)
                                         LIBERTY COUNSEL
                                         P.O. Box 540774
                                         Orlando, FL 32854
                                         Phone: (407) 875-1776
                                         Facsimile: (407) 875-0770
                                         Email: dschmid@LC.org

                                         *Attorneys for Plaintiff Liberty Counsel, Inc.*

                                         *Admitted pro hac vice*


## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2017, I cause a true and correct copy of the

foregoing to be electronically filed with this Court. Service will be effectuated on all counsel of

record via this Court's ECF/electronic notification system.

                                         /s/ Daniel J. Schmid
                                         Daniel J. Schmid
                                         LIBERTY COUNSEL
                                         P.O. Box 540774
                                         Orlando, FL 32854
                                         Phone: (407) 875-1776
                                         Facsimile: (407) 875-0770
                                         Email: dschmid@LC.org