IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| LIBERTY COUNSEL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 4:17-CV-71 |
| | ) |
| GUIDESTAR USA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## GUIDESTAR USA, INC.'S REPLY IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

Sona Rewari (VSB No. 47327)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(703) 714-7512
(703) 918-4018 (facsimile)
srewari@hunton.com

Gregory N. Stillman (VSB No. 14308)
Wendy C. McGraw (VSB No. 37880)
HUNTON & WILLIAMS LLP
500 East Main, Suite 1000
Norfolk, Virginia 23510
(757) 640-5300
(757) 625-7720 (facsimile)
gstillman@hunton.com
wmcgraw@hunton.com

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................1

  A.  Liberty Counsel's Lanham Act Claim Should Be Dismissed With Prejudice.........1

    1.  GuideStar's SPLC Notation Was Not False Or Misleading ......................1

    2.  The SPLC Notation Was Not Made In Any "Commercial Advertising
      or Promotion".......................................................................................4

      a.  The SPLC Notation Does Not Fit The Definition Of
        Commercial Speech ....................................................................4

      b.  Liberty Counsel's "Mixed Message" Theory Defeats Its
        Claim...........................................................................................7

      c.  The *Bolger* Factors Confirm That The SPLC Notation Is Not
        Commercial Speech. ...................................................................8

        i.  The SPLC Notation Is Not An Advertisement ...................8

        ii.  The SPLC Notation Does Not Mention Any Of
          GuideStar's Products Or Services.......................................9

        iii.  Liberty Counsel Has Not Identified Any Economic
          Motivation GuideStar Had For The SPLC Notation..........10

        iv.  No Reader Would See The SPLC Notation As
          Trying To Sell Any GuideStar Product Or Service ...........11

      d.  There Is No Commercially Competitive Relationship Between
        Liberty Counsel And GuideStar....................................................12

      e.  Liberty Counsel Cannot Allege Any Facts Showing That
        GuideStar Was Trying To Influence Consumers To Buy Any
        *GuideStar* Product Or Service .....................................................13

  B.  Liberty Counsel's Interference With Business Expectancy Claim Must Be
    Dismissed........................................................................................................14

  C.  Liberty Counsel's Defamation Claim Should Be Dismissed With Prejudice........16

    1.  The SPLC Notation Is Not Actionable As Defamation ............................16

    2.  Liberty Counsel Has Not Alleged, And Cannot Allege, Actual
      Malice .................................................................................................18

III.  CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*,
  820 F. Supp. 1072 (N.D. Ill. 1993) ...................................................................................8

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983)...............................................................................................8, 9, 10

*Capital Square Rev. & Advisory Bd. v. Pinette*,
  515 U.S. 753 (1995)..........................................................................................................2

*Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New York*,
  447 U. S. 557 (1980)........................................................................................................10

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993).....................................................................................................4, 10

*Dex Media West, Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ...........................................................................................9

*Doe v. Pittsylvania Cnty.*,
  844 F. Supp. 2d 724 (W.D. Va. 2012) ..............................................................................3

*Duggin v. Adams*,
  234 Va. 221, 360 S.E.2d 832 (1987)...............................................................................15

*Fennell v. Marion Indep. Sch. Dist.*,
  963 F. Supp. 2d 623 (W.D. Tex. 2013).............................................................................3

*Goodman v. Does 1-10*,
  No. 4:13-cv-139-F, 2014 WL 1310310 (E.D.N.C. Mar. 28, 2014) ...........................10, 13

*Gordon & Breach Science Publishers v. American Institute of Physics*,
  859 F. Supp. 1521 (S.D.N.Y. 1994).........................................................................4, 8, 12, 13

*Gorran v. Atkins Nutritionals, Inc.*,
  464 F. Supp. 2d 315 (S.D.N.Y. 2006), *aff'd* .................................................................6, 9

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*,
  721 F.3d 264 (4th Cir. 2013) .....................................................................................10, 12

*Handsome Brook Farm, LLC v. Humane Animal Care, Inc.*,
  193 F. Supp. 3d 556 (E.D. Va. 2016) .......................................................................10, 11, 14

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1980)................................................................................19

*Huntingdon Life Sciences, Inc. v. Rokke*,
   978 F. Supp. 662 (E.D. Va. 1997) ..........................................................7, 10, 11

*Kenyatta v. Moore*,
   623 F. Supp. 220 (S.D. Miss. 1985).........................................................3

*Lexmark International, Inc. v. Static Control Components, Inc.*
   __ U.S. __, 134 S.Ct. 1377 (2014)..........................................................12, 13

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)...................................................................................18

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
   413 U.S. 376 (1973)...............................................................................5

*Powers v. Clarke*,
   No. 3:11CV763-HEH, 2014 WL 6982475 (E.D. Va. Dec. 9, 2014) .........................2

*Radiance Foundation, Inc. v. N.A.A.C.P.*,
   786 F.3d 316 (4th Cir. 2015) ............................................................6, 8, 9, 11

*Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*,
   487 U.S. 781 (1988)................................................................................7

*Rogers Electrical of Va., Ltd. v. Sims*,
   No. CL14-1917, 2015 Va. Cir. LEXIS 239 (Feb. 13, 2015) .................................15

*Semco, Inc. v. Amcast, Inc.*,
   52 F.3d 108 (6th Cir. 1995) ....................................................................8

*Seven-Up Co. v. Coca-Cola Co*,
   86 F.3d 1379 (5th Cir. 1996) ..................................................................14

*Snyder v. Phelps*,
   580 F.3d 206 (4th Cir. 2009) ..................................................................16

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)................................................................................19

*Tobinick v. Novella*,
   848 F.3d 935 (11th Cir. 2017) .................................................................5, 9

*Tobinick v. Novella*,
   No. 9:14-CV-80781, 2015 WL 1191267 (S.D. Fla. Mar. 16, 2015).........................6

*U.S. Olympic Comm. v. Am. Media, Inc.*,
    156 F. Supp. 2d 1200 (D. Colo. 2001) ...................................................................9

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ..................................................................................................4, 5

*Village of Schaumburg v. Citizens for a Better Env't*,
    444 U.S. 620 (1980) .....................................................................................................7

*Virginia Prosthetics, Inc. v. Fuller*,
    90 Va. Cir. 408 (July 22, 2015) ...............................................................................15

*Virginia v. Black*,
    538 U.S. 343 (2003) .....................................................................................................2

*Vuyyuru v. Met. Hospital*,
    No. LC-2881-4, 1998 WL 972210 (May 22, 1998) ...............................................15

*Wojnarowicz v. Am. Family Ass'n*,
    745 F. Supp. 130 (S.D.N.Y. 1990) ............................................................................8

*Woody v. Carter*,
    77 Va. Cir. 198 (Floyd County) (Oct. 13, 2008) ...................................................15

*Young v. City of Louisville*,
    7 F.3d 237 (6th Cir. 1993) ..........................................................................................2

### STATUTES AND OTHER AUTHORITIES

Lanham Act ................................................................................................................ *passim*

BLACK'S LAW DICTIONARY 1529 (9th ed. 2009) (copy attached as Exhibit 1) ..............................3

## I.   INTRODUCTION

Liberty Counsel has not stated, and cannot state, a false advertising claim under the Lanham Act, or any claim for defamation or tortious interference under Virginia law.  Like its Complaint, its oversize Opposition to GuideStar's motion to dismiss is fat with legal conclusions, but lean on any facts to support those conclusions.  As the Supreme Court has made clear, legal conclusions are not a substitute for factual allegations, and a plaintiff cannot get by a motion to dismiss in the absence of facts demonstrating a plausible legal claim.  This guidance should be particularly heeded where, as here, the plaintiff is seeking to punish and chill speech that is fully-protected by the First Amendment.  This lawsuit has no merit, and the Court should dismiss the Complaint with prejudice.

## II.   ARGUMENT

### A.   Liberty Counsel's Lanham Act Claim Should Be Dismissed With Prejudice.

GuideStar's opening Brief demonstrated that Liberty Counsel's false advertising claim fails as a matter of law because the SPLC Notation was (1) not a false or misleading representation of fact; and (2) not made in a commercial advertisement or promotion.[1]  Liberty Counsel's Opposition fails to rebut that showing.

### 1.   GuideStar's SPLC Notation Was Not False Or Misleading.

Liberty Counsel concedes that to be actionable under the Lanham Act, the SPLC Notation must be shown to be both (1) a representation of fact, and (2) false or misleading.  *See*

---

[1] GuideStar's opening Brief challenged only these elements of Liberty Counsel's claim, as these are defects that cannot be cured through artful amendments.  Curiously, Liberty Counsel devotes a significant chunk of its Opposition to defending *other* elements of its false advertising claim.  While GuideStar notes that those arguments also rely almost exclusively on legal conclusions, it will limit this Reply to only those elements challenged in its opening Brief.

Dkt. 23 ("Opp'n"), at 16.  It tries to meet this burden with incantations of "representation of fact" and "false and misleading," as if these phrases were talismanic.  They are not.

As GuideStar has already pointed out, the text of the SPLC Notation—"This organization [Liberty Counsel] was flagged as a hate group by the Southern Poverty Law Center"—is literally true;  even the Complaint alleges that the SPLC *has* designated Liberty Counsel as a hate group. *See* Dkt. 1, Compl. ¶¶ 1, 2, 57, 98.  Liberty Counsel's Opposition provides no answer to that.

Liberty Counsel's position is just made worse by its response to the argument that the term "hate group" does not have one fixed meaning.  As GuideStar explained, even a statement that "Liberty Counsel is a hate group" (which the SPLC Notation did not say) would not be actionable because it makes no specific and measurable claim that is capable of empirical verification.  Liberty Counsel's Opposition claims that "numerous courts have noted" that "'hate groups' have historically been understood as those that commit violent crimes and seek to intimidate people with violence and crime," followed by a string cite of seven cases and parentheticals, as purported support for this claim.  Opp'n at 16-17.  But *not one* of those seven cases says any such thing; nor are Liberty Counsel's parentheticals even remotely accurate; some of those cases do not even mention the term "hate group;" several use the phrase "violent hate group," indicating that "violent" and "hate group" are not redundant terms; and none attempts a definition of the term "hate group."[2]

---

[2] *See Virginia v. Black,* 538 U.S. 343 (2003) (no use of the term "hate group" in opinion); *Capital Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995) (no use of the term "hate group" in opinion); *Young v. City of Louisville*, 7 F.3d 237 (6th Cir. 1993) (per curiam) (stating "[m]any hate groups commit violent crimes, and active participation in such violent hate groups would not be constitutionally protected"); *Powers v. Clarke*, No. 3:11CV763-HEH, 2014 WL 6982475, at *3 n.10 (E.D. Va. Dec. 9, 2014) (quoting definition of "gang" in Virginia Department of Corrections operating procedures as:  "A group of individuals who: (a) possess common characteristics that distinguish them from other offenders or groups of offenders and who, as an entity, pose a threat to the safety and security of staff, the facility, other offenders or

Liberty Counsel uses the same misleading, word-plucking tactic to argue that the definition of "hate speech" in *Black's Law Dictionary* supports its position that "hate group" necessarily conveys a group that endorses violence and criminality. But that dictionary's definition of "hate speech" is explicitly *not limited* to "speech expressed 'in circumstances in which the communication is likely to provoke violence,'" as Liberty Counsel claims. Opp'n at 17. It defines "hate speech" as "[s]peech that carries no meaning other than the expression of hatred for some group, such as a particular race, esp. in circumstances in which the communication is likely to provoke violence." BLACK'S LAW DICTIONARY 1529 (9th ed. 2009) (copy attached as Exhibit 1). That definition of "hate speech" is fully consistent with GuideStar's position that the "hate group" designation (which again, was made by the SPLC, not GuideStar) does not convey that this is a group of violent criminals.

Its efforts to twist the case law and the English language notwithstanding, Liberty Counsel has not alleged, and cannot allege, that the SPLC Notation contained a provably false representation of fact. Its Lanham Act claim thus should be dismissed with prejudice.

---

the community; (b) have a common distinctive goal, symbolism or philosophy; (c) possess identifiable skills or resources, or engage in unauthorized/illegal activities. Criminal street gangs, hate groups, and cults that meet these conditions are considered gangs."); *Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 641 (W.D. Tex. 2013) (using the term "hate group" in one sentence: "Given that the KKK is a white-supremacist hate group with a history of violence against African-Americans, and particularly in light of the fact that the text contained a noose, the alleged content of this text was extremely offensive and threatening."); *Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724, 740 (W.D. Va. 2012) (quoting plaintiff's affidavit which called the Ku Klux Klan "one of the most violent hate groups in American history" and noting that "[t]he Ku Klux Klan has a history in this country of brutal violence and instilling fear in its victims through harassment and intimidation."); *Kenyatta v. Moore*, 623 F. Supp. 220, 221 n.2 (S.D. Miss. 1985) (no mention of the term "hate group" but as its only allusion to a similar term, noting that in 1967, the FBI had "established a far-reaching counterintelligence program called 'COINTELPRO-Black Nationalist Hate Groups' the stated purpose of which was 'to expose, disrupt, misdirect, discredit, or otherwise neutralize the activities of black nationalist, hate-type organizations and groupings, their leadership, spokesmen, membership and supporters, and to counter their propensity for violence and civil disorder.'").

**2.    The SPLC Notation Was Not Made In Any "Commercial Advertising or Promotion."**

The claim also fails for another independent reason.  As Liberty Counsel concedes, a plausible Lanham Act requires that the SPLC Notation have been made in "commercial advertising or promotion," which is to be decided using the four-part test derived from *Gordon & Breach Science Publishers v. American Institute of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994).  Opp'n at 5-6.  Its claim, however, flunks that test.

**a.    The SPLC Notation Does Not Fit The Definition Of Commercial Speech.**

With respect to the first *Gordon & Breach* factor—whether the representation was commercial speech—Liberty Counsel concedes that commercial speech is, at its core, speech that "does no more than propose a commercial transaction."  Opp'n at 6.  In other words, it is speech that communicates nothing beyond "I will sell you the X … at the Y price."  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976).  Or, as elsewhere explained by the Supreme Court, commercial speech requires purely economic motivations: "an expression related *solely to the economic interests* of the speaker and its audience."  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993).

Liberty Counsel does not contend that the SPLC Notation proposes any commercial transaction.  Nor could it.  It does not attempt to show that the SPLC Notation was related *solely* to the economic interests of GuideStar and users of its website.  Instead, Liberty Counsel argues that it is enough that GuideStar's profile page about Liberty Counsel (the "Profile Page") offers readers the ability to purchase a "Premium or Pro Search Subscription" to read the full Liberty Counsel profile. Opp'n at 18.  This argument makes no sense.  It's plain from Exhibit B to the Complaint that the SPLC Notation was made on the free, no-subscription-required version of the Profile Page.  No one was asked to pay to read the SPLC Notation.

Moreover, even had the SPLC Notation been on a subscribers-only version of the Profile Page, that still would not make it commercial speech. Paid subscriptions are also a typical feature of newspapers, magazines, and academic journals. If charging a fee to *access* speech were enough, then virtually every newspaper editorial, book, movie, and theatrical performance would be commercial speech. Liberty Counsel's theory has no limiting principle.

It is also settled law that the mere fact that speech is delivered in a form that is sold—even for profit (which is not the case here)—does not strip it of First Amendment protection. *See, e.g., Va. State Bd. of Pharmacy*, 425 U.S. at 761 ("Speech … is protected even though it is carried in a form that is 'sold' for profit, … and even though it may involve a solicitation to purchase or otherwise pay or contribute money.") (citations omitted); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385 (1973) ("If a newspaper's profit motive were determinative, all aspects of its operations—from the selection of news stories to the choice of editorial position—would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment.").

The Eleventh Circuit rejected an argument similar to Liberty Counsel's just a few months ago, in *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017)—a case discussed at length in GuideStar's opening Brief but which Liberty Counsel's Opposition elects to ignore. It found that "neither the placement of [informative] articles next to revenue-generating advertising nor the ability of a reader to pay for a website subscription" would be sufficient to make them commercial speech. 848 F.3d at 952. Citing both Supreme Court precedent and law from its sister circuits, the court found that those informative articles were not subject to the Lanham Act: "Even if Dr. Novella receives some profit for his quasi-journalistic endeavors as a scientific

skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for memberships may generate revenue." *Id.*

The Fourth Circuit likewise held, in *Radiance Foundation, Inc. v. N.A.A.C.P.*, 786 F.3d 316, 332 (4th Cir. 2015), that an article that did not itself offer to sell anything or mention any of the defendant's services, did not become commercial speech because the website on which it appeared allowed readers to make donations, pay to sponsor billboards, secure licensed content, and erect webpages for a fee. "The fact that the websites provided opportunities to engage in financial transactions does not demonstrate that the article itself was commercial." *Id.* at 332.

Liberty Counsel argues that the transactional opportunities in *Radiance* were on a different page of the website than the challenged article, and that here readers were offered subscriptions on the same page. But that is a distinction without a difference. The SPLC Notation (which itself was published on the free version of the Profile Page) did not offer to sell anything. The ability to purchase a subscription is just as "unconnected" to the challenged statement here, as it was in *Radiance. See e.g., Tobinick v. Novella,* No. 9:14-CV-80781, 2015 WL 1191267, at *6–7 (S.D. Fla. Mar. 16, 2015) ("Like nearly every not-for-profit corporation, [the defendant] seeks to support itself by soliciting donations and offering products for sale. That does not render its speech commercial, particularly where, as here, there is nothing in the record to indicate that the articles containing the allegedly false and/or defamatory statements do not remain free to view online."); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 328 (S.D.N.Y. 2006) (dismissing negligent misrepresentation claims where "plaintiff's complaints relate solely to the non-commercial aspects of the [Atkins Diet] Website — speech that is

afforded full First Amendment protection" and "do not premise liability on any commercial transaction proposed on the website"), *aff'd*, 279 F'App'x 40 (2d Cir. 2008).

      **b.**      **Liberty Counsel's "Mixed Message" Theory Defeats Its Claim.**

Liberty Counsel argues that speech can also contain a "mixed message"—*i.e.*, both commercial and non-commercial aspects. Opp'n at 6. But that is a non-starter, for two reasons.

<u>First</u>, Liberty Counsel has not identified *any* aspect of the SPLC Notation that is commercial, *i.e.,* anything that expressly or impliedly proposes a commercial transaction.

<u>Second</u>, even if it could ferret out a "mixed message" in the SPLC Notation, Liberty Counsel would still lose. When commercial speech is "inextricably intertwined with otherwise fully protected speech," it does not retain its commercial character and is instead treated as fully-protected speech. *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988) (overturning law requiring professional fundraisers to disclose to potential donors the percentage of charitable contributions collected that were actually turned over to charity); *see also Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) (extending full First Amendment protection to charitable solicitation because it is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or ... views").

This is significant because Liberty Counsel's Complaint squarely places the SPLC Notation in an area of fully-protected speech. There, it repeatedly denounces the SPLC Notation as a "political" decision (Compl. ¶ 107), "politically-motivated" (*id.* ¶ 119), and an injection of "raw liberal political ideology" (*id.* ¶ 111). While Liberty Counsel chose to ignore these allegations in its Opposition, the Court should not. Based on Liberty Counsel's own allegations, the SPLC Notation is not punishable under the Lanham Act. *See, e.g., Huntingdon Life Sciences, Inc. v. Rokke*, 978 F. Supp. 662 (E.D. Va. 1997) (Morgan, J.) (finding animal welfare

organization's statements about animal testing laboratory were political speech, and not actionable under Lanham Act); *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 142 (S.D.N.Y. 1990) (finding pamphlet published and distributed by non-profit in an effort to stop funding by the National Endowment for the Arts was not actionable under Lanham Act).

### c.    The *Bolger* Factors Confirm That The SPLC Notation Is Not Commercial Speech.

If any doubt remains that the SPLC Notation is not actionable under the Lanham Act, it is removed by Liberty Counsel's feeble answers to the Fourth Circuit's commercial-speech test under *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983).

### i.    The SPLC Notation Is Not An Advertisement.

The pamphlets and other mass mailings by the contraceptives manufacturer in *Bolger* were "conceded[ly]" advertisements.  463 U.S. at 66.  The Supreme Court found this concession to be non-dispositive proof that the pamphlets were commercial speech.  *Id.*

Here, the SPLC Notation is not conceded to be an advertisement.  Neither is the Profile Page.  Nor does Liberty Counsel muster any argument under which either could reasonably be viewed as advertising, far less advertising of *GuideStar*.  *See* Opp'n at 7.  Even the cases cited in Liberty Counsel's meager discussion of the first *Bolger* factor are contrary to its position.[3]

Indeed, when, as here, even the most cursory of examinations confirms that a publication is not an advertisement, the first *Bolger* factor is easily ruled out.  *See Radiance*, 786 F.3d at 332

---

[3] *See Semco, Inc. v. Amcast, Inc.,* 52 F.3d 108, 112-13 (6th Cir. 1995) (finding that even though article was "not concededly advertising" under first *Bolger* factor, the other factors were met because article was "peppered" with promotions of the defendant and its products which did not "contribute to its intellectual or technical value"); *Gordon & Breach*, 859 F. Supp. at 1540-42 (dismissing Lanham Act claims that alleged that articles publishing results of comparative survey rating the defendants' products as superior were false advertising because articles were not commercial speech under *Bolger* analysis); *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.,* 820 F. Supp. 1072, 1077 (N.D. Ill. 1993) (dismissing Lanham Act claim because letter sent to a single entity was not "advertising" or "promotion").

(finding that article criticizing plaintiff organization "was not an advertisement" when it did not mention the defendant's services or "offer the reader anything for sale"); *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012) (finding that a cursory examination of yellow pages directory reveals that it is not advertising); *Gorran*, 464 F. Supp. 2d at 327 (finding that defendants' diet book was not an advertisement of their products when it was several hundred pages long and yet contained only "several references" to the defendants' products and services); *U.S. Olympic Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1207 (D. Colo. 2001) (finding that "even the most cursory of examinations" of a magazine describing and depicting photographs of athletes participating in 32 Olympic events, and including schedule for upcoming Olympics and paid advertisements, was not itself an advertisement and not commercial speech under the Lanham Act).

### ii.   The SPLC Notation Does Not Mention Any Of GuideStar's Products Or Services.

Liberty Counsel fares no better on the second *Bolger* factor.   In *Bolger*, the pamphlets referred to the manufacturer's "specific products," which the Court took as an indicator that they were commercial speech.    463 U.S. at 66-67.   Liberty Counsel argues that the second *Bolger* factor is met because the Profile Page refers to *Liberty Counsel's* services.   Opp'n at 7-8.   That is incorrect as a matter of law.   *See Tobinick*, 848 F.3d at 951 (finding that second *Bolger* factor was not met where challenged articles only discussed plaintiff's products and did not mention any products offered by defendant);   *Radiance*, 786 F.3d at 332 (finding that article that discussed plaintiff organization was not commercial speech under *Bolger* factors where it did not offer anything for sale or even mention the defendant organization's services).

### iii. Liberty Counsel Has Not Identified Any Economic Motivation GuideStar Had For The SPLC Notation.

Liberty Counsel is equally off-base in its discussion of the third *Bolger* factor which asks "whether *the speaker* has an economic motivation *for the speech*." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 285 (4th Cir. 2013) (emphases added).

First, contrary to Liberty Counsel's discussion of this factor, the question is not whether the speaker has any abstract economic interests, but whether the speaker has an economic motivation *for the speech* at issue.[4]  *Id.*; *see Goodman v. Does 1-10,* No. 4:13-cv-139-F, 2014 WL 1310310, at *6  (E.D.N.C. Mar. 28, 2014) (dismissing Lanham Act claim where complaint alleged that website author had a commercial interest in visits to her website, but "utterly fail[ed] to allege any commercial interest in the actual content of any of the articles or comments").

Liberty Counsel identifies no economic motive in GuideStar's decision to add the SPLC Notation to the Profile Page.[5]  Its theory that GuideStar relies on donations is just a poorer

---

[4] Liberty Counsel insists that it is enough that it has alleged that GuideStar was motivated by the "financial interests of its audience." Opp'n at 10.  But it cannot find a single case that says the *audience's* interests alone are sufficient.  Every case it cites uses the conjunctive:  the economic interests of the speaker *and* its audience. *Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New York*, 447 U. S. 557, 561 (1980) (commercial speech is "expression related solely to the economic interests *of the speaker and its audience*") (emphasis added); *City of Cincinnati*, 507 U.S. at 422 (quoting *Central Hudson*); *Rokke*, 978 F. Supp. at 665 (same). Indeed, if the audience's economic interests alone were enough, even classroom textbooks would be commercial speech.

[5] Liberty Counsel plucks many words from *Handsome Brook Farm, LLC v. Humane Animal Care, Inc.*, 193 F. Supp. 3d 556 (E.D. Va. 2016) (Cacheris, J.), *appeal docketed*, No. 2016-1813, (4th Cir. July 18, 2016), but it nowhere discusses the facts of that case, undoubtedly because they stand in stark contrast to this case. That nonprofit was the licensor of a "Certified Humane®" logo that producers, distributors, and retailers could, for a fee, place on their eggs. *Id.* at 562.  In addition to annual license and inspection fees, the defendant also received fees based on the quantity of eggs sold by its licensees under the Certified Humane® logo. *Id.* at 562-63.  Its revenues from these fees were more than double the amounts it received in donations.  *Id.* at 568. The plaintiff was an egg supplier who was not defendant's licensee and whose eggs bore a different certification logo. *Id.*  The case arose after the defendant sent an

version of an unsuccessful argument from *Rokke*. The nonprofit animal welfare organization there had issued press releases and made statements to the media about an animal testing laboratory which were alleged to be false. 978 F. Supp. at 666. The laboratory argued that the nonprofit had mailed a fundraising letter to every member "implicating" its lab practices and urging readers to "be as generous as you can." *Id.* But the court found that "[w]hile increasing its fundraising total may have been a tangential goal" of the statements, the defendant's motive was political, not economic, and thus outside the Lanham Act. *Id.*

This case is even easier. There is no allegation that GuideStar has featured the SPLC Notation, or the Profile Page, in any fundraising solicitation. Moreover, unlike *Rokke*, the Court does not have to figure out whether GuideStar's motivation was economic or not: Liberty Counsel's Complaint repeatedly characterizes GuideStar's decision to add the SPLC Notation as politically-motivated. *See, e.g.*, Compl. ¶¶ 107, 111, 119. The Complaint also shows that GuideStar has explained its intention as informative. *See* Compl., Ex. A. But there are no facts to show that GuideStar stood to gain anything financially from the SPLC Notation.

### iv.   No Reader Would See The SPLC Notation As Trying To Sell Any GuideStar Product Or Service.

The last commercial-speech factor requires the Court to ask: would a reader navigating to the Profile Page on GuideStar's website view the SPLC Notation as "advertising a [GuideStar] service, or proposing a transaction of any kind"? *Radiance*, 786 F.3d at 332. This is an important element—indeed it was "key" in *Radiance*—because once there is a speaker, the First

---

email to 39 retailers who were considering buying plaintiff's eggs in which it asserted that the certifications on the plaintiff's eggs were not verifiable or invalid, urging them reconsider changing suppliers, and extolling the benefits of eggs bearing its Certified Humane® logo. *Id.* at 564-65. Judge Cacheris found "little difficulty concluding that speech is commercial when it comes from a speaker whose organizational goal is to direct demand toward certain consumer goods, the speaker receives revenue based on the amount of those goods sold, that revenue is the speaker's largest source of income, and the speech in question directly promotes those same goods while disparaging the goods of a competitor." *Id.* at 569.

Amendment covers the *communication*, safeguarding both the speaker's right to say it and the listener's right to hear it. *Greater Balt. Ctr.*, 721 F.3d at 282. Thus, the Court must consider the "context" of speech, and determine whether a listener would view it as proposing a commercial transaction, or doing something more than or different from that. *Id.*

Liberty Counsel's Opposition does not discuss the SPLC Notation's *content*, far less its *context*. But there is no getting around the fact that nothing in the SPLC Notation or the context in which it was presented would lead any reader to believe that GuideStar was advertising its own services or products, or proposing to sell the reader something. Indeed, the context of the SPLC Notation included a "tool tip" that explained who the SPLC is, provided a link to the SPLC's website, noted that there are "disagreements" about the SPLC's "specific choices," stated GuideStar's belief that "on balance" the information was "worth sharing" and told the reader "we leave it to you to come to your own conclusions." *See* Dkt. 17-1.

The SPLC Notation simply has none of the four indicia of commercial speech, and is outside the reach of the Lanham Act. This is an independently sufficient ground to dismiss Liberty Counsel's Lanham Act claim, and the Court should do so, with prejudice.

> **d.    There Is No Commercially Competitive Relationship Between Liberty Counsel And GuideStar.**

The remainder of the *Gordon & Breach* test further confirms that the SPLC Notation is not actionable, because it was not made in any "commercial advertising or promotion." Liberty Counsel's argument that a "direct" competitive relationship is not necessary for a Lanham Act claim, under *Lexmark International, Inc. v. Static Control Components, Inc.* __ U.S. __, 134 S.Ct. 1377 (2014), is a red herring. GuideStar never said that a direct competitive relationship was necessary. *See* Dkt. 17, GuideStar's Mem. in Supp. ("Op. Br."), at 17. Neither did the court in *Gordon & Breach*. It said:  "a defendant who is in commercial competition with plaintiff."

859 F. Supp. at 1536. It also stressed the solely "commercial' reach of the Lanham Act, noting that criticism "by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service" is outside the reach of the Act. 859 F. Supp. at 1534 (internal quotation omitted).

While *Lexmark* held that an indirect competitor has standing to bring a Lanham Act claim, "[s]urely *Lexmark* is not to be read to eliminate the word 'commercial' from 'commercial advertising and promotion.'" *Goodman,* 2014 WL 1310310, at *6 n.7.

Liberty Counsel's Complaint alleges *no* facts demonstrating any commercially competitive relationship whatsoever with GuideStar. According to the Complaint, it provides legal services and advocacy, while GuideStar provides an online directory of nonprofit organizations. The mere fact that both are nonprofits, and both rely on charitable giving, does not demonstrate that they operate in the "same market,"– just as all for-profits are not in the same market simply because they rely on sales of products and services for their existence. The utter lack of *any* commercially competitive relationship is not dispositive, but it certainly underscores the implausibility of the theory that the SPLC Notation was made in "commercial advertising or promotion."

> **e.    Liberty Counsel Cannot Allege Any Facts Showing That GuideStar Was Trying To Influence Consumers To Buy Any *GuideStar* Product Or Service.**

Despite Liberty Counsel's attempt to rewrite it, the third *Gordon & Breach* factor asks whether the defendant was trying to influence consumers to buy *its*–that is, *GuideStar's*— products or services. *Gordon & Breach*, 859 F. Supp. at 1536. This factor is not met by Liberty Counsel's allegations that GuideStar was trying to influence consumer decisions about *Liberty Counsel*. Otherwise, every consumer product review could be deemed "commercial advertising or promotion." Though Liberty Counsel tries to support this theory with phrases tweezed from

two cases, neither case is remotely apposite. *Seven-Up Co. v. Coca-Cola Co,*, 86 F.3d 1379, 1386 (5th Cir. 1996) (finding that "The Future Belongs to Sprite" presentation which was developed and designed by Coca-Cola to target independent bottlers and convince them to switch from 7UP to Sprite was "specifically intended to influence consumers *to buy its product*") (emphasis added); *Handsome Brook Farm*, 193 F. Supp. 3d at 571 (finding that defendant's email to retailers that stated "I hope you will reconsider changing suppliers" and then extolled the benefits of eggs certified under defendant's standard and bearing its logo "was intended to communicate the value of [defendant's] license to retailers to induce them to purchase the licensed eggs, rather than [plaintiff's] unlicensed … eggs").

Liberty Counsel has not alleged, and cannot allege, any facts to demonstrate that the SPLC Notation was made in "commercial advertising or promotion." Its Lanham Act claim must be dismissed with prejudice.

**B.     Liberty Counsel's Interference With Business Expectancy Claim Must Be Dismissed.**

GuideStar's opening brief identified four defects in Liberty Counsel's tortious interference with business expectancy claim. The Opposition fails to rebut any of them.

Liberty Counsel concedes that it has not alleged interference with any *specific* business expectancy. Opp'n at 24. GuideStar's opening brief cited six cases, decided by five different Judges of this Court, dismissing such claims for failure to identify any specific business expectancy in the complaint. Op. Br. at 19-20. Liberty Counsel asks the Court to ignore those cases because they were not decided by the Supreme Court of Virginia. Opp'n at 24-25. This is hardly a response. These courts were not making new Virginia law, nor were they creating a heightened pleading standard. They were applying Virginia law, as stated by the Supreme Court of Virginia, which has defined the elements of this claim as:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987).   Where the claim involves interference with an expectancy, the plaintiff must also plead and prove that the defendant used improper methods to interfere.   *Id.*   at 226-27, 360 S.E.2d at 836.   A plaintiff can no more allege an interference with business expectancy claim without identifying a specific expectancy, than it can allege an interference with contractual relations claim without identifying a specific contractual relation.   The claim is not for interference in the abstract or a catch-all tort for business losses.

The federal courts are not the only ones to hold plaintiffs to pleading the elements of this claim.   Circuit courts in Virginia also require the plaintiff to identify at the pleading stage the specific business expectancy that was lost.   *See, e.g.*, *Rogers Electrical of Va., Ltd. v. Sims*, No. CL14-1917, 2015 Va. Cir. LEXIS 239 (City of Chesapeake) (Feb. 13, 2015) (demurrer granted where plaintiff made only general allegation of interference with a business relationship with "customers and clients"); *Virginia Prosthetics, Inc. v. Fuller*, 90 Va. Cir. 408 (City of Charlottesville) (July 22, 2015) (granting demurrer where plaintiff did not identify any specific vendor or former patient with which he had a legitimate business expectancy); *Woody v. Carter*, 77 Va. Cir. 198 (Floyd County) (Oct. 13, 2008) (granting demurrer where the "complaint fail[ed] to state any existence of a specific economic relationship or expectancy"); *Vuyyuru v. Met. Hospital*, No. LC-2881-4, 1998 WL 972210, at *5 (City of Richmond) (May 22, 1998) (granting demurrer and noting that "since a specific contractual relationship or business expectancy must

be proved, it makes sense that a specific contractual relationship or business expectancy must be alleged").

Liberty Counsel has failed to allege that GuideStar interfered in any *specific* business expectancy, so its claim must be dismissed.  Even if it could surmount this hurdle, it still has not alleged any facts showing that GuideStar had knowledge of whatever that specific expectancy may have been, or that it intended to interfere with it.  Its Opposition attempts no response.  If anything, it just confirms that Liberty Counsel *cannot* allege any such facts, because Liberty Counsel claims that its donor information is confidential and it would be "unconstitutional" to require Liberty Counsel to reveal it.  Opp'n at 25, n.1.[6]

Liberty Counsel also does not rebut that the only "improper methods" it is alleging are a violation of the Lanham Act and defamation.  Its tortious interference claim, therefore, depends entirely on the success of one of those claims.  As demonstrated in GuideStar's opening Brief and this Reply, however, both of those claims fail as a matter of law.  This claim, therefore, should also be dismissed with prejudice.

## C.    Liberty Counsel's Defamation Claim Should Be Dismissed With Prejudice.

GuideStar's opening brief asserted that Liberty Counsel's defamation claim fails as a matter of law because: (1) the SPLC Notation is not an actionable statement, and (2) even if it was, Liberty Counsel has not alleged any facts showing that GuideStar published the SPLC Notation with actual malice.  The Opposition provides no good answer to either argument.

### 1.    The SPLC Notation Is Not Actionable As Defamation.

Tellingly, Liberty Counsel's Opposition nowhere quotes what the SPLC Notation actually said.  But this is a defamation case, and one that concerns a matter of public concern and

---

[6] No case cited by Liberty Counsel even remotely suggests that it is unconstitutional to require a plaintiff who has elected to sue a private party for money damages to plead the necessary elements of its claims.

a self-identified public figure, at that.  The words uttered are critical to consider.   See *Snyder v.*

*Phelps*, 580 F.3d 206, 219 (4th Cir. 2009) (the court must "assess how an objective, reasonable

reader would understand a challenged statement by focusing on the plain language of the

statement and the context and general tenor of its message").

The SPLC Notation stated:   "This organization was flagged as a hate group by the

Southern Poverty Law Center."  Compl., Ex. B.  It was followed with a "tool tip" that stated:

> The Southern Poverty Law Center (SPLC) is a respected hate
> group watchdog.  There is disagreement on some of the SPLC's
> specific choices, but on balance GuideStar believes the analysis is
> strong enough to share.  We leave it to you to come to your own
> conclusions.

*See* Dkt. 17-1 (hyperlink omitted).  The question is:  would a fair-minded reader read this as

stating: (a) "The SPLC has flagged Liberty Counsel as a hate group," as GuideStar asserts;  *or*

(b) "Liberty Counsel is a hate group," as Liberty Counsel asserts?

If it is (a), then Liberty Counsel's defamation claim fails, because that statement is

undisputedly true.

If it is (b)—which requires a significant leap of logic—then Liberty Counsel's claim also

fails because that is a statement that cannot be proved true or false.  This is made plain by

Liberty Counsel's Complaint which itself identifies two competing notions of "hate group."  Is it

a group with "beliefs or practices that attack or malign an entire class of people, typically for

their immutable characteristics," as the SPLC has defined it?  *See* Op. Br. at 11.  Or is it a group

that is also associated with "criminality and violence," as Liberty Counsel says it should be?

Compl. ¶ 58.

GuideStar's opening Brief supplied the Court with one dictionary's definition of "hate"

which, by itself, was almost 20 pages long and demonstrated a wide variety of meanings and

uses of the term.  *See* Op. Br., Exs. 3 & 4.  GuideStar could not find any dictionary definition of "hate group."   Neither could Liberty Counsel, apparently, because its Opposition resorts to distorting a definition of "hate speech."  *See* Opp'n at 17.[7]  Its analogy to the statement "in my opinion John Jones is a liar" is wholly inapposite, because "liar" does have a settled meaning, and thus, the statement "implies a knowledge of facts which lead to the conclusion that Jones told an untruth."  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990).

GuideStar has not asserted that it "couched" the SPLC Notation as an opinion, as Liberty Counsel argues.  Opp'n at 18.  Rather, its position is that the phrase "hate group," by itself, does not convey any particular fact or set of facts because, as Liberty Counsel's own allegations demonstrate, this is not a label that has one *settled* meaning.  Readers of the SPLC Notation were provided a link to the SPLC's website where it gave *its* definition of "hate group."  *See* Compl., Ex. B; Op. Br., Ex. 1; Op. Br. at 11.  As GuideStar's opening Brief pointed out, Liberty Counsel is not claiming that it does not fit the SPLC's definition.  The Opposition makes no rejoinder to that argument.

The SPLC Notation is not actionable as defamation, and its claim should be dismissed with prejudice.

**2.      Liberty Counsel Has Not Alleged, And Cannot Allege, Actual Malice.**

Liberty Counsel's defamation claim fails for a second, independent reason:  it has not alleged, and cannot allege, any *facts* to show that GuideStar acted with "actual malice."

---

[7] Liberty Counsel's argument that the SPLC's "hate group" designation cannot be an opinion because GuideStar has called it "data" is incorrect.  "Data" can be information about others' opinions.  Indeed, marketing companies and advertisers routinely collect "data" about consumer opinions.

Its Opposition points to the Complaint's conclusory allegations that GuideStar acted with "actual malice" or "reckless disregard." Those are legal conclusions. They are not factual allegations entitled to be credited at even the motion to dismiss stage.

Liberty Counsel also claims that GuideStar did not conduct its own independent investigation of whether Liberty Counsel is a hate group before advising its readers of the SPLC designation, that it was aware of criticisms of SPLC's hate group label, and that it knew that the issue was "highly politicized." Opp'n at 33-34. But those do not show actual malice either.

A publisher's failure to investigate, standing alone, is not reckless disregard. *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968). The actual malice standard is not a negligence standard; it is subjective, requiring that "the defendant in fact entertained serious doubts as to the truth of his publication" and "that the defendant actually had a high degree of awareness of [their] probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1980) (internal quotation omitted). Knowledge that the SPLC has been criticized as *politically-biased* is a far cry from knowledge that its designation of Liberty Counsel as a "hate group" is *false*. Moreover, Liberty Counsel alleges that GuideStar subjectively understands a "hate group" as one that denigrates a group of people based on their identity. *See* Compl. ¶ 43. It alleges no facts suggesting that GuideStar subjectively entertained any doubts about the veracity of that label as applied to Liberty Counsel when the SPLC Notation was published.

Liberty Counsel has not alleged, and cannot allege, any actual malice. Count III of the Complaint should be dismissed with prejudice.

### III.   <u>CONCLUSION</u>

For all of these reasons, GuideStar requests the Court dismiss the Complaint with prejudice.

Respectfully submitted,

GUIDESTAR USA, INC.

By:_____/s/_____

Sona Rewari (VSB No. 47327)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(703) 714-7512
(703) 918-4018 (facsimile)
srewari@hunton.com

Gregory N. Stillman (VSB No. 14308)
Wendy C. McGraw (VSB No. 37880)
HUNTON & WILLIAMS LLP
500 East Main, Suite 1000
Norfolk, Virginia 23510
(757) 640-5300
(757) 625-7720 (facsimile)
gstillman@hunton.com
wmcgraw@hunton.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2017, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to all counsel of record.

          /s/
_____

Sona Rewari (VSB No. 47327)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(703) 714-7512
(703) 918-4018 (facsimile)
srewari@hunton.com

-21-