IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

LIBERTY COUNSEL, INC.,

    Plaintiff,

v.                                                   CIVIL ACTION NO. 4:17cv71

GUIDESTAR USA, INC.,

    Defendant.

FILED
JAN 23 2018
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

*MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on GuideStar USA, Inc.'s ("Defendant") Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the lawsuit of Liberty Counsel, Inc. ("Plaintiff"). Having reviewed the Parties' filings in this case, the Court finds this matter is ripe for judicial determination. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Liberty Counsel, is a nonprofit education, advocacy, and legal defense organization dedicated to advancing religious freedom, the sanctity of human life, and the preservation of family values from a Christian and Biblical perspective. Liberty Counsel relies on its good reputation to attract and receive charitable donations from individuals, groups, churches, organizations, foundations, and others. Defendant, GuideStar, is a nonprofit organization whose purpose is to encourage philanthropy by providing information about nonprofits that members of the public can use to make educated and informed decisions about their relationships with and donations to these nonprofits. In 1996, GuideStar began publishing a

"Directory of American Charities," and the website currently maintains individual profiles with information about 1,684,038 active nonprofit organizations. Specifically, Liberty Counsel is one of the nonprofit organizations profiled on GuideStar's website.

In 2017, GuideStar began to include at the top of its "profile" pages for 46 nonprofit organizations this note: "This organization has been flagged as a hate group by the Southern Poverty Law Center." Southern Poverty Law Center ("SPLC") holds itself out as the "premier U.S. nonprofit organization monitoring the activities of domestic hate groups and other extremists, including the Ku Klux Klan, the neo-Nazi movement, neo-Confederates, racist skinheads, black separatists, antigovernment militias, Christian identity adherents, and others." ECF No. 17 at 10. GuideStar reports that the organization made a "judgment to trust" SPLC's decision to label certain groups as "hate groups" and GuideStar did not conduct its own analysis of whether a nonprofit deserves to be labeled a "hate group." Liberty Counsel received SPLC's hate group designation and objected to this designation. Liberty Counsel believes that SPLC applies this label to groups based on their ideologies, rather than criminality and violence. On June 23, 2017, GuideStar announced its decision, on its website, that it was removing the SPLC notation from the profiles of the 46 organizations "for the time being." ECF No. 17 at 7.

On June 28, 2017, Plaintiff, through counsel, filed a Complaint against Defendant. ECF No. 1. Plaintiff alleges a claim for a violation of the Lanham Act, a claim for tortious interference with business expectancy, and a claim for defamation under Virginia common law. Plaintiff contends that Defendant violated the Lanham Act with Defendant's adoption and republication of SPLC's defamatory, false, and misleading representation of Plaintiff as a "hate group"; Defendant tortuously interfered with Plaintiff's business expectancy through its representation that Plaintiff is a "hate group"; and Defendant's republications were false and

defamatory. On July 24, 2017, Defendant filed the instant Motion to Dismiss, requesting that this Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. ECF No. 16.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment proceeding. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also Bassett v. Nat'l Collegiate Athletic*

3

*Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

## III. DISCUSSION

GuideStar contends that the Court should grant the Motion to Dismiss because (1) Liberty Counsel's Lanham Act claim fails as a matter of law; (2) Liberty Counsel's interference with business expectancy claim has fatal defects, and (3) Liberty Counsel has not and cannot allege a plausible defamation claim.

### I. Liberty Counsel's Claim for a Violation of the Lanham Act

Liberty Counsel contends that they have sufficiently pled a claim for a violation of the Lanham Act.

The Lanham Act provides,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in a commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (1946).[1] In order for a party to satisfy the threshold requirement for

---

[1] The legislative history of the Lanham Act clearly shows that the Act's false advertising provision does not include noncommercial speech based on the following:

> Under the proposed change only false or misleading "advertising or promotion" would be actionable, whether it pertained to the advertiser itself or another party. The change would exclude all other misrepresentations from Section 43(a) coverage. These others are the type which raise free speech concerns, such as a Consumer Report which reviews and may disparage the quality of . . . products, [and] misrepresentations made by interested groups which may arguably disparage a company and its products . . . All of these would be judged by [F]irst Amendment law . . . and not Section 43(a) law . . . .

4

asserting a violation of the Lanham Act, the defendant's "false or misleading representation [must] be a commercial advertisement or promotion." *Handsome Brook Farm, LLC v. Humane Animal Care, Inc.*, 193 F. Supp. 3d 556, 567 (E.D. Va. 2016). To determine whether a plaintiff has satisfied the threshold requirement, the court must address the following four-point test: (1) commercial advertising or promotion must be commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *See id.* (quoting *Gordon & Breach Science Publ'rs v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y 1994)).

Commercial speech is "speech that does no more than propose a commercial transaction." *See Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 331 (4th Cir. 2015). To determine whether speech is commercial, the court looks at the following factors: (1) whether the speech is an advertisement; (2) whether the speech refers to specific products or services; (3) whether the speaker has an economic motivation for the speech; and (4) whether the listener would perceive the speech as proposing a transaction. *See id.* at 331-32 (stating that these factors are cumulative and it is not necessary that all of these characteristics be present). The term "noncommercial" refers to the First Amendment commercial speech doctrine. *Id.* at 331. "The canon of constitutional avoidance in this area is thus not a device of judicial evasion but an effort to reconcile the commercial values protected by the Lanham Act and the democratic value of

---

> The proposed change in Section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material . . . . The Section is narrowly drafted to encompass only clearly false and misleading commercial speech.

135 Cong. Rec. H1216-17 (daily ed. April 13, 1989) (statement of Rep. Kastenmeier).

expressive freedom." *Id.* at 322 (stating that "information services" without any commercial or transactional component is speech and nothing more).

Plaintiff argues that Defendant violated the Lanham Act because of Defendant's republication of SPLC's "hate group" designation. Plaintiff argues that Defendant's profile of Liberty Counsel is commercial speech because Defendant's profile distributes information to its consumers, with misrepresentations of organizations, in hopes of influencing its consumers' decisions to donate to specific organizations. Additionally, Plaintiff argues that its allegations satisfy the specific reference requirement because Defendant's adoption and republication of SPLC's designation of Plaintiff as a "hate group" was made in reference to Plaintiff as an organization and in terms of the services it provides. Plaintiff states that Defendant has an economic motivation for its adoption and republication of SPLC's "hate group" designation because Defendant's nonprofit organization functions on the website subscriptions of its customers and donations stemming from the information they provide on the website. Plaintiff alleges that Defendant's audience is likely to perceive Defendant's profile of Plaintiff as influencing consumer transactions when it comes to whether or not donors should donate to Plaintiff's organization.

Plaintiff also argues that both Parties are commercial competitors because the Parties are competitive in the nonprofit market as they both rely on charitable giving to continue in their missions. Specifically, as nonprofits competing for the limited resources of philanthropic giving, their relationship is commercially competitive. Plaintiff notes that both Parties concede that Plaintiff's allegations satisfy the sufficient dissemination requirement. Plaintiff argues that Defendant's false and misleading representation of fact actually deceives and has the tendency to deceive consumers. Defendant meant for the SPLC designation to represent an assertion of fact

and Plaintiff's allegation that the fact is false must be accepted as true at this stage. Additionally, Defendant placed its misleading representation in interstate commerce by placing the representation on its commercially available website. Plaintiff argues that it sufficiently pled facts to show damage to its reputation and the likelihood of lost revenue from Defendant's representation of fact that Plaintiff is a "hate group." Lastly, Plaintiff contends that they have satisfied all requirements of pleading a violation of the Lanham Act, and Defendant's Motion should be denied.

    Defendant argues that Plaintiff cannot allege a plausible claim for a violation of the Lanham Act. Defendant contends that the SPLC notation is not misleading because Plaintiff does not allege any facts to show that it does not fit SPLC's "hate group" label under the definition of the term "hate group." Specifically, Defendant states that the dictionary's definition of "hate speech" is fully consistent with Defendant's position that the "hate group" designation does not convey that "hate groups" are a group of violent criminals. On the contrary, Plaintiff insists that the term "hate group" should relate to groups that incite violence and criminality, such as the Ku Klux Klan and neo-Nazis; however, Plaintiff does not present facts that hate groups require criminality and violence. Defendant also argues that the SPLC notation was not commercial speech because SPLC does not propose any commercial transactions. Specifically, Defendant contends that the SPLC notation and the mission of its website are to relay information to potential donors, not for the purpose of commercial transactions.

    Additionally, Defendant states that Plaintiff alleges no facts to show that Defendant has a financial or economic motivation for its website or use of the SPLC notation. Defendant refutes Plaintiff's argument that Defendant had economic motivation simply because Defendant's profile page about Plaintiff offers readers the ability to purchase a "Premium or Pro Search

Subscriptions" to read the full Plaintiff profile. Defendant contends that the website did not ask anyone to pay to read the SPLC notation. Defendant states that it is not sufficient to demonstrate a commercially competitive relationship simply because both Parties are nonprofit corporations. Specifically, Defendant contends that the SPLC notation was not made in commercial advertising, promotion, or to influence consumers to buy any of Defendant's products or services because there are no facts to show that the notation would lead any reasonable reader to believe that Defendant used the notation to advertise or sell anything to the reader. Plaintiff identifies no economic motivation in Defendant's decision to add the SPLC notation to Plaintiff's profile page because there are no facts to show that Defendant stood to gain anything financially from the SPLC notation.

The Court finds that Plaintiff has not sufficiently pled a claim for a violation of the Lanham Act. Plaintiff did not sufficiently plead facts to satisfy the first element of a Lanham Act violation because the Court determines that Defendant's statement is not commercial speech.

The Court finds that Defendant's use of SPLC's notation is not commercial speech because the notation does not fall under the type of speech that violates the Lanham Act. Defendant's review of Plaintiff's organization would fall under the laws of the First Amendment, not that of the Lanham Act. *See Radiance Found.*, 786 F.3d at 331; *see also* 135 Cong. Rec. H1216-17. Specifically, Defendant has an expressive right to comment on social issues under the First Amendment. *See Radiance Found.*, 786 F.3d at 332. The notation is similar to a consumer report addressed in the aforementioned legislative history of the Lanham Act. *See* 135 Cong. Rec. H1216-17. The notation simply states the SPLC's review of Plaintiff's organization, and that review labels Plaintiff's organization as a "hate group." Defendant's notation does not request or propose a sale of its products or services. *See Handsome Brook Farm*, 193 F. Supp.

3d at 567. Defendant simply intended the notation to be an informative statement that SPLC flagged Plaintiff's organization as a hate group. *See Radiance Found.*, 786 F.3d at 336. Therefore, the Court finds that SPLC is an interest group who made a statement that disparages the Plaintiff, not even Plaintiff's products or services. *See* 135 Cong. Rec. H1216-17.

The Court further concludes that Defendant's "informative services" is merely speech because it does not suggest any commercial or transactional component. *See Radiance Found.*, 786 F.3d at 336. It is not sufficient that Plaintiff alleges that Defendant advertised its subscription on the website because the notation itself did not propose a commercial transaction or imply from the SPLC notation that the donors should buy its subscription. Pursuant to *Radiance Found.*, the Court finds that SPLC's notation was not an advertisement, did not offer the reader anything for sale, and did not mention Plaintiff's services or Defendant's services. *See id.* at 331-32. A reasonable person on Defendant's website, reading SPLC's notation, is unlikely to read the notation as advertising a service or proposing a transaction of any kind. *Id.* Therefore, the Court finds that Defendant's statement is not commercial speech.

Because Plaintiff cannot satisfy the first element of a Lanham Act violation, the Court does not address the other three elements of the Lanham Act. The Court finds that Plaintiff does not have a valid claim for a violation of the Lanham Act. Therefore, Plaintiff's Lanham Act claim fails and is dismissed.

## II. Liberty Counsel's State Claims for Tortious Interference with Business Expectancy and Defamation

Liberty Counsel also argues that they have sufficiently pled state claims for tortious interference with business expectancy and defamation.

Pendent jurisdiction, in the sense of judicial power, exists whenever there is a federal claim, and the relationship between that claim and the state claim permits the conclusion that the

entire action before the court comprises but one constitutional case. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. *Id.* at 726. If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Id.* Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. *Id.* at 726-27 ("Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.").

The Court will not address the two pending state law claims in this Motion. The Court, within its discretion, will also dismiss both state law claims because the Court dismissed Plaintiff's federal claim alleging a violation of the Lanham Act.

Therefore, within the Court's discretion, Plaintiff's state claims are dismissed without prejudice.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this Order to the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January 23, 2018

Raymond A. Jackson
United States District Judge